[No. A025292. First Dist., Div. Three. Dec. 31, 1984.]

KENT ERIC SMITH, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Harold W. Teasdale and Victor D. Sonenberg, Deputy Attorneys General, for Defendant and Appellant.

Denise M. Nolan and Kleebauer & Nolan for Plaintiff and Respondent.

---

**OPINION**

**BARRY-DEAL, J.**—The Department of Motor Vehicles of the State of California (DMV) appeals from a judgment in favor of Kent Eric Smith (Smith) granting a peremptory writ of mandate directing the DMV to reinstate Smith's class 1 or 2 (truck and bus) driver's license. At issue is a DMV regulation which purportedly provides that persons with diabetes requiring insulin to control the condition may not be granted class 1 or 2 drivers' licenses.

DMV argues that under California statutes and regulations persons with insulin-controlled diabetes are absolutely barred from class 1 or 2 licensure. We do not read the code provisions so narrowly. We find that there are several statutory exceptions to the rule in question which, depending on the facts of each individual case, may permit the class 1 or 2 driving privilege to be extended to an insulin-controlled diabetic. We find that Smith has made a showing bringing himself within these exceptions. Accordingly, we do not reach the question whether an absolute bar from class 1 or 2 licensure would be constitutional, and we affirm the judgment.

### Evidence at the Administrative Hearing

On July 2, 1982, a formal hearing was held before the DMV (Mr. H. Sanders, referee) to determine whether Smith could properly retain his class 1 or 2 driver's license. (Under Veh. Code, § 12804, drivers' licenses are divided into four classes. In essence, a class 1 or 2 license permits driving of trucks and buses, while class 3 and 4 licenses are for automobiles and motorcycles.) Smith, who waived his right to an attorney, testified to and presented documentary evidence of the following facts.

Smith was born on April 23, 1943, and was diagnosed as having diabetes in 1953. He injects thirty-five units of insulin per day, tests his urine daily, and sees his doctor about every six to eight months. His diabetes is so well controlled that it cannot be detected by blood or urine tests. Smith, who is 5 feet 9 inches tall and weighs 160 pounds, is fit enough to race bicycles, and he has never had dizzy or fainting spells.

One of Smith's physicians stated, ". . . you are in excellent health and free of infectious disease. Your diabetes has been well-controlled and you have shown a high level of responsibility for your good health."

Smith has been driving for 20 years, 7 in California, and drives a total of about 1,000 miles a month (business and pleasure). He testified to having been involved in three minor traffic accidents.[1] He received one speeding ticket in May 1981. At the time of the hearing he had no tickets pending.

Smith supports his wife and five children by working as a garbage collector for Orinda-Moraga Disposal Service. He drives a garbage truck to the dump every other day, taking turns with other drivers, that trip being about 30 miles. He therefore drives about 75 miles per week or 300 miles per month on the job.

Smith suffers from diabetic retinopathy in both eyes and is blind in his right eye. Dr. Verne, a specialist in diseases of the retina, found that no restrictions on Smith's activities were necessary and that ". . . the visual acuity in his left eye is stable and the prognosis is good."

On September 1, 1982, Smith was given an "extensive" driving test which included residential, business, and freeway driving. The results were stated to be satisfactory, in that Smith controlled the vehicle in a "reasonable manner and showed good compensation for the loss of his right eye."

Smith testified that he needs a class 2 license to keep his job.

Upon this evidence the DMV determined that Smith did not meet the physical requirements for a class 1 or 2 driver's license and ordered him to surrender that license. He was permitted to keep a class 3 or 4 license.

Smith sought judicial review of the administrative decision pursuant to Code of Civil Procedure section 1094.5, and the superior court ordered reinstatement of his class 1 and 2 license. This appeal by the DMV followed.

### Discussion

The conflict which we are called upon to resolve in this case is whether, as maintained by the DMV, an applicant's insulin-controlled diabetes automatically disqualifies the applicant from obtaining a class 1 or 2 license, or whether, as urged by Smith, the determination of whether to issue a license to such person must be made on a case-by-case factual basis.

---

[1]In October 1980, the brakes of the truck he was driving failed, and he bumped into the truck in front of him at a scales station. In early March 1981, he was in an intersection accident with a postal employee which was the latter's fault. And in late March 1981, a parked car pulled out and scraped the right side of his vehicle. In that incident each driver paid his own damages.

Our review of the statutes and regulations in question convinces us that Smith's position is correct.

Vehicle Code section 12804, subdivision (a), establishes the requirements for the testing of applicants for drivers' licenses. An applicant for a class 1 or 2 license is required to have a medical examination within two years of application. The medical report "shall be on a form approved by the department [DMV] or by the Federal Highway Administration or the Federal Aviation Administration. In establishing the requirements, consideration may be given to the standards presently required of motor carrier drivers by the Federal Highway Administration of the United States Department of Transportation. . . ." (Veh. Code, § 12804, subd. (a).)

The basis for the DMV's position is found in title 13 of the California Administrative Code, section 100.10.[2] It states, "The minimum medical requirements for a Class 1 or 2 license required by Section 12804(a) of the Vehicle Code shall be those standards required of motor carrier drivers by the Federal Highway Administration of the Department of Transportation as set forth in the Federal Motor Carrier Safety Regulations. (49-CFR 391.41)"

Title 49 Code of Federal Regulations, section 391.41 (1983),[3] provides in part: "(b) A person is physically qualified to drive a motor vehicle if that person . . . (3) Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control; . . ." Title 49 Code of Federal Regulations, section 391.43, contains instructions to the examining physicians and states, "*Diabetes.* If insulin is necessary to control a diabetic condition, the driver is not qualified to operate a motor vehicle. If mild diabetes is noted at the time of examination and it is stabilized by use of a hypoglycemic drug and a diet that can be obtained while the driver is on duty, it should not be considered disqualifying. However, the driver must remain under adequate medical supervision." Section 391.49 provides for waiver of certain physical disqualifications, but not for diabetes.

Thus, under the federal regulations, drivers who are subject to the regulations in part 391 of the Federal Motor Carrier Safety Regulations cannot be licensed if they have insulin-controlled diabetes. However, not all truck drivers are subject to those regulations. Those who drive only in " 'intracity operation[s],' " that is, within municipalities and their "commercial zones," are exempt (unless they carry hazardous materials). (49 C.F.R. §§ 390.16, 390.33(a)A3.)

---

[2] All citations to the California Administrative Code are to title 13.

[3] *All federal regulations referred to were revised as of 1983 unless otherwise indicated.*

 We hold that California Administrative Code, section 100.10, in adopting 49 Code of Federal Regulations, section 391.41, also adopted the federal exemptions to that regulation. Therefore, upon any subsequent review of Smith's class 1 or 2 driving privilege, the trier of fact must determine whether his driving is an "'exempt intracity operation'" within 49 Code of Federal Regulations, sections 390.16, 390.33, 1048.101. If it is, and he meets the other qualifications, he will be entitled to a class 1 or 2 license, which at least permits him to drive as required in his current employment.

 Even if Smith does not come within the federal intracity exemption, the department's regulations contain other exceptions which apply in his case. California Administrative Code, section 100.11 provides that if the examining physician elects not to issue a medical certificate, the DMV may do so, qualifying the applicant for a class 1 or 2 license "other than engaging in interstate commerce" if (a) the DMV determines that the applicant meets the requirements of 49 Code of Federal Regulations, section 391.41, or (b) the applicant does not meet the federal standards because of a physical condition where driver ability can be determined by driving examination and the DMV finds the applicant has compensated for the defect, or (c) where the applicant fails to meet federal standards "because of a condition or conditions other than those wherein safe driving ability can be determined by a driving examination, if the applicant is renewing a California Class 1 or 2 license, or is applying for a medical certificate to keep valid such a license that has not yet expired, provided that the department determines upon evaluation of competent medical evidence that the condition or conditions have not affected his [or her] ability to drive safely and may reasonably be expected not to affect his [or her] ability to drive safely within two (2) years."

Thus, the Attorney General's argument notwithstanding, the DMV itself has recognized that in some cases applicants may be able to show that they are capable of driving safely despite their medical conditions which would disqualify them under the federal standards.

Furthermore, the Legislature itself has stated in clear language that the DMV has discretion to license an applicant who has overcome a medical problem. Vehicle Code section 12804, subdivision (a), immediately after the language quoted above permitting consideration of federal standards, provides, "*Any* physical defect of the applicant, which, in the opinion of the department, is compensated to insure safe driving ability, shall not prevent the issuance of a license to the applicant." (Italics added.)

In Vehicle Code section 12805, the Legislature has enumerated grounds which require the DMV to refuse a license to an applicant. Applicants

barred from licensure include those with a "disorder characterized by lapses of consciousness" (Veh. Code, § 12805, subd. (c)) and those who are "unable to safely operate a motor vehicle upon a highway (1) because of experiencing, within the last three years, either a lapse of consciousness or an episode of marked confusion caused by any condition which may bring about recurrent lapses or (2) because of any other disability, disease, or disorder . . . ." (Veh. Code, § 12805, subd. (e).)

But Vehicle Code section 12806, subdivision (a), provides: "(a) *Any* physical or mental defect of the applicant which in the opinion of the department does not affect the applicant's ability to exercise reasonable and ordinary control in operating a motor vehicle upon the highway shall not prevent the issuance of a license to the applicant." (Italics added.)

Despite this language, the DMV insists that it is not required to review cases such as Smith's on an individual basis. It points to the federal regulations which it has adopted as its own and which contain no exception (but the intracity exemption) to the ban on licensure of insulin-controlled diabetics. ██ ██ It then argues the well-established principles that regulations reasonably adapted to the administration of a legislative act have the effect of law (*Dabis* v. *San Francisco Redevelopment Agency* (1975) 50 Cal.App.3d 704, 706 [122 Cal.Rptr. 800]), that they are presumed valid (*Young* v. *Department of Fish & Game* (1981) 124 Cal.App.3d 257, 282 [177 Cal.Rptr. 247]), and that courts will defer to an administrative agency's construction of its regulations (*Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 355 [185 Cal.Rptr. 453, 650 P.2d 328]).

██ While it is true that the Legislature has vested the DMV with the power to adopt "rules and regulations as may be necessary to carry out the provisions of this [Veh.] code . . ." (Veh. Code, § 1651), it is also true that ". . . the DMV is an administrative agency created by statute and, as such, it only possesses the powers that are conferred on it by statute. [Citation.] . . . [A]n administrative agency has no authority to enact rules or regulations which alter or enlarge the terms of legislative enactments. [Citations.]" (*Addison* v. *Department of Motor Vehicles* (1977) 69 Cal.App.3d 486, 493-494 [138 Cal.Rptr. 185].)

██ We read the pertinent legislation, which we have quoted above, as stating unambiguously that the DMV may *consider* federal standards in establishing the medical requirements for a class 1 or 2 license, but that procedures must be established whereby an applicant may show the DMV that he or she has compensated for a defect or condition and is capable of driving safely. (Compare the procedures utilized in the case of epileptics. [See

Note, *The Epilepsies: Their Effect on the Biological Family, the State-Decreed Family, and Civil Liability in California* (1976) 13 San Diego L.Rev. 978, 1016.])

In fact, in the case at bench Smith made just such a showing. The evidence, which we have summarized above, was uncontradicted that he has compensated for his diabetes and that he has driven and will continue to drive safely in his work. Therefore, in revoking Smith's license, the DMV abused its discretion in that it did not proceed in the manner required by law. (Code Civ. Proc., § 1094.5, subd. (b).) It follows that the superior court properly issued its writ of mandate directing the DMV to reinstate Smith's class 1 or 2 license.

Having held that the trial court properly determined that Smith was entitled to continue driving with a class 1 or 2 license, it is important that we note the parameters of our decision. We are aware of opinions which have upheld denial of truckers' licenses to insulin-controlled diabetics on the ground that then existing medical evidence showed that the rules were rationally based. (E.g., *Monnier* v. *United States Dept. of Transp.* (E.D.Wis. 1979) 465 F.Supp. 718.)[4] The essence of the situation from a medical point of view was described in this way: the work environment for the commercial driver in interstate commerce presents excessive physical and mental demands.[5] Treatment of insulin-controlled diabetes required a fine balance of

---

[4] Other decisions have upheld similar restrictions on licensure of persons physically challenged in other ways. (E.g., *Ranger Division* v. *Bayne* (1983) 214 Neb. 251 [333 N.W.2d 850] [49 C.F.R. § 391.41 constitutes a bona fide occupational qualification and therefore a per se defense to a discrimination action brought by a driver who had lost the fingers and part of the thumb on his right hand]; *Lewis* v. *Metropolitan Transit Com'n* (Minn. 1982) 320 N.W.2d 426 [substantial evidence supported finding that driver blind in one eye posed serious safety threat]; *Harvill* v. *Roadway Exp., Inc.* (8th Cir. 1981) 640 F.2d 167 [vision]; *Boynton Cab. Co.* v. *ILHR Department* (1980) 96 Wis.2d 396 [291 N.W.2d 850] [refusal to hire person with congenital handicap of missing right hand and forearm not prohibited discrimination; strong dis. by Abrahamson, J.]; *Costner* v. *United States* (8th Cir. 1983) 720 F.2d 539 [upholding termination of epileptic employee who was seizure-free for 20 years and accident-free for 15 years in interstate commerce, stating, ". . . the individual qualifications of the plaintiff are immaterial to the analysis. If a challenged statutory or regulatory classification is rational, it may be enforced without exception . . . [citations]" (*id.*, at pp. 542-543), rev. *Costner* v. *United States* (E.D.Mo. 1982) 555 F.Supp. 146]; cf. *Bur. of Traffic Safety* v. *Johnson* (1984) 84 Pa. Cmwlth. 26 [478 A.2d 521] [upholding driver's privilege of school bus driver who had history of "a mild acute myocardial infarction" but no present existing cardiovascular condition].)

[5] "Perceptional and manipulative skills are needed to turn the steering wheel, apply the brakes, shift the gears, and carry out the many other driving tasks that are associated with operating a commercial motor vehicle. Some of the mental and physical demands imposed on commercial drivers in carrying out these driving functions are: constant visual and auditory monitoring; maintaining upright posture which may result in discomfort and postural fatigue; constant attention to details; 'living' away from home; poor lay-over facilities; excessive administrative requirements; vibration, noise, and other environmental stresses; and those physiosocial stresses as monotony and lack of social support." (Department of

insulin, diet, and exercise which many experts felt was impossible to maintain in that work environment. (Department of Transportation, Federal Highway Administration, Medical Qualifications of Drivers, Standards for Insulin-Dependent Diabetics; Solicitation of Comments, *supra,* at pp. 16452-16458.) Thus, even the American Diabetes Association, which is dedicated to fighting discrimination in employment against patients with diabetes mellitus, conceded that as of 1977 available data supported the unexempted policy of the Department of Transportation. (42 Fed.Reg. 57488, 57489 (Nov. 3, 1977); see also *Bur. of Traffic Safety* v. *Slater* (Pa. Commonwealth (1983) 75 Pa. Cmwlth. 310 [462 A.2d 870] [school bus driver who did not adhere to diet and whose blood sugar was not within the normal range denied license under unexempted state regulation].)

It may be that the state of medical science is still such that insulin-controlled diabetics cannot function safely in the grueling environment of the long distance interstate trucker. On the other hand, the medical arts may have advanced in the past seven years to a point where this is not universally the case. We are not called upon to decide that question. We note, however, that the DMV has the power, when issuing a license, ". . . whenever good cause appears to impose . . . restrictions applicable to the licensee as the department may determine to be appropriate to assure the safe operation of a motor vehicle by the licensee." (Veh. Code, § 12813, subd. (a).) ▇ In holding that the DMV must consider whether Smith has compensated for his condition to an extent that he is able to perform his job function safely, we do not limit the DMV's authority to impose appropriate restrictions upon his license. That is, upon reviewing Smith's driving privilege at some future proceeding, the DMV may find that he is capable of driving safely to and from the dump, as is required in his present job, but that he is incapable of safely undertaking long hauls, for example to Los Angeles; and it may restrict his license accordingly. This, we find, is clearly what the statutory scheme under consideration contemplates.

The Supreme Court has observed that in a situation such as Smith's it is "'obviously true'" that retention of his driver's license is a fundamental right and that revocation or suspension of it "does constitute a severe personal and economic hardship. [Citation.]" (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398 [188 Cal.Rptr. 891, 657 P.2d 383]; see Civ. Code, § 54.) On the other hand, the Legislature has granted the DMV the power to restrict the driving privilege of physically challenged persons to promote the public safety. We view our holding in this case not

Transportation, Federal Highway Administration, Medical Qualifications of Drivers, Standards for Insulin-Dependent Diabetics; Solicitation of Comments (42 Fed.Reg. 16452 (Mar. 28, 1977) at pp. 16455-16456).)

only as following the clear meaning of the legislation under consideration, but also as assuring that the DMV will exercise its discretion in a manner which ensures that the philosophy underlying it will be promoted without undue restriction on individual rights and privileges.

The judgment granting peremptory writ of mandate is affirmed, without prejudice to the Department of Motor Vehicles taking subsequent action regarding Smith's class 1 or 2 license consistent with the views expressed herein.

White, P. J., and Scott, J., concurred.