[No. F019285. Fifth Dist. Aug. 25, 1993.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
CHARLES MICHAEL WILSON et al., Real Parties in Interest.

32

COUNSEL

Daniel E. Lungren, Attorney General, Marvin Goldsmith, Assistant Attorney General, Darryl L. Doke, James H. Wernicke and David DeAlba, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

James P. Samarco, Oren & Oren, Donald E. Oren, McCormick, Barstow, Sheppard, Wayte & Carruth, Wade M. Hansard and Todd W. Baxter for Real Parties in Interest.

OPINION

FRANSON, J.*—This matter is before us on the State of California's (hereafter the State) petition for writ of mandate and/or prohibition after

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.

respondent superior court denied the State's motion for summary judgment. Real party in interest Wilson has sued the State for failing to suspend or revoke the driver's license of a diabetic person who ran head-on into the car driven by Wilson.

We conclude that real party has failed to establish the existence of a mandatory duty on the State to revoke the driver's license of the third party. This hiatus preserves the State's discretionary licensing immunity under Government Code section 818.4. We reverse and order entry of judgment for the State.

### FACTS, PROCEDURAL HISTORY, AND CONTENTIONS

The relevant facts are undisputed. In October 1989, Ray Campbell suffered a diabetic reaction and ran his car into an abutment. California Highway Patrol Officer Bravo was dispatched to the accident scene and wrote an accident report that stated: "This accident was caused by [Campbell] suffering a diabetic reaction which caused him to travel off the r[oa]d." Although authorized to do so by the Vehicle Code and directed to do so by a Highway Patrol general order, Officer Bravo did not file a request that the Department of Motor Vehicles (DMV) reexamine Campbell's ability to safely operate a motor vehicle.

Ten months later, on July 19, 1990, Campbell again apparently suffered a diabetic reaction while driving his car. He crossed the center line and ran into Wilson's on-coming car. Campbell was killed and Wilson was severely injured.

In a second amended complaint filed July 31, 1992, Wilson sought damages from the State because "employees of the State of California knew, or had reason to believe, that . . . Campbell was not capable of safely operating a motor vehicle because of his diabetes." Wilson alleged the State had a mandatory duty pursuant to Vehicle Code section 12805, subdivision (c),[1] to revoke Campbell's driver's license. Wilson alleged the State negligently failed to perform this duty, proximately causing his injuries. (Wilson also sued Campbell's estate and Campbell's physicians. Those counts are not before us on this petition. Talitha Campbell, administrator of Campbell's estate, has filed a return to the present petition, claiming to be a real party in interest.)

---

[1]Vehicle Code section 12805, subdivision (c) provides: "The department shall not issue a driver's license to, or renew a driver's license of, any person: [¶] . . . [¶] (c) When it is determined, by examination or other evidence, that the person is unable to safely operate a motor vehicle upon a highway."

The State moved for summary judgment on the basis the State was immune from liability. After hearing on the motion, the court denied summary judgment, concluding that "A triable issue of fact exists whether the State, through Officer Bravo, determined that plaintiff [*sic*, Campbell] was unable to safely operate a motor vehicle upon a highway and, thus, had a mandatory duty not to issue a license . . . pursuant to Vehicle Code section 12805(c)."

The State contends summary judgment should have been granted because the uncontested facts fail to establish the conditions for state liability under Government Code section 815.6.[2]

Wilson contends he has established a triable issue of fact concerning whether Bravo's traffic report constituted a determination that Campbell could not safely operate a car, so as to invoke a mandatory duty on the part of the DMV to revoke Campbell's driver's license. He also argues that Bravo had a mandatory duty to request reexamination of Campbell, similarly invoking DMV's mandatory duty to revoke Campbell's driver's license.

Talitha Campbell contends Bravo had a mandatory duty to request that DMV reexamine Campbell and that Bravo's knowledge was sufficient to invoke DMV's duty to revoke Campbell's license. She also argues the State is liable to Wilson on a "special relationship" theory. Finally, she argues the State negligently performed its mandatory duty to correctly report the nature of the accident to DMV.

## DISCUSSION

A driver who suffers from insulin-controlled diabetes is not automatically subject to license forfeiture or nonrenewal. DMV must examine each case on its own facts to determine whether the driver has "compensated for . . . [that] condition and is capable of driving safely." (*Smith v. Department of Motor Vehicles* (1984) 163 Cal.App.3d 321, 328 [209 Cal.Rptr. 283].)

After considering a driver's particular condition and circumstances, either of two statutory duties may come into play.

Vehicle Code section 12805 ("Refusal to issue or renew driver's license; mandatory grounds") provides in subdivision (c) that DMV "shall not"

---

[2]Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

renew the driver's license of any person when "it is determined, by examination or other evidence, that the person is unable to safely operate a motor vehicle upon a highway."

Vehicle Code section 12806 ("Refusal to issue or renew driver's license; discretionary grounds") provides in subdivision (c) that DMV "may refuse" to renew the driver's license of any person who "has a disorder characterized by lapses of consciousness or who has experienced, within the last three years, either a lapse of consciousness or an episode of marked confusion caused by any condition which may bring about recurrent lapses, or who has any physical or mental disability, disease, or disorder which could affect the safe operation of a motor vehicle unless the department has medical information which indicates the person may safely operate a motor vehicle. . . ."

It is apparent from comparison of these two sections that the nature of DMV's statutory duty changes with its determination of the driver's level of impairment.[3] Thus, upon making a determination the driver cannot drive safely, DMV is mandated to terminate driving privileges. However, DMV is also authorized to determine that a person suffers from the conditions listed in Vehicle Code section 12806, subdivision (c), but that safe operation of a vehicle may be possible. In this situation, DMV is permitted to license the driver, with or without restrictions.[4]

As applied to drivers with insulin-controlled diabetes, case and statutory law therefore require a two-step evaluation. First, on a case-by-case basis DMV must determine in detail the individual's medical condition. Second, DMV must determine the extent to which that condition impairs the ability to drive. Only if DMV determines the "person is unable to safely operate a motor vehicle upon a highway" (Veh. Code, § 12805, subd. (c)) is DMV mandated to terminate driving privileges.

*Trewin* v. *State of California* (1984) 150 Cal.App.3d 975 [198 Cal.Rptr. 263, 41 A.L.R.4th 104] considered the effect of this two-step decision-making on the State's liability for a subsequent accident caused by an impaired driver. That case was before the court on appeal from a judgment

---

[3]Wilson argues that the "examination or other evidence" requirement of Vehicle Code section 12805, subdivision (c) requires DMV to consider Bravo's determination that a diabetic reaction caused the October 1990 accident. Even if that were true, i.e., that the provision required rather than merely authorized consideration of such evidence, the requirement does nothing to bolster Wilson's claim. Bravo's report, at most, established an obligation of DMV to exercise its discretionary reexamination function, as described below.

[4]Wilson apparently asserts that Officer Bravo had a mandatory duty to actually revoke or suspend Campbell's driving privilege at the time of the October 1990 accident. Wilson has not suggested any basis for the existence of this power, much less an enactment that mandates exercise of the power.

on the pleadings in favor of the State. The complaint alleged the State had negligently issued a driver's license to Wood, "after ascertaining that Wood was a person of advanced years and diminished physical and mental agility to the point of senility and knowing that issuance of driving privileges to him would endanger the lives of other persons . . . ." (*Id.* at p. 977.)

Although the *Trewin* court found it was error to enter judgment on the pleadings in favor of the State because the complaint by inference stated a cause of action for violation of a mandatory duty, the court noted that Government Code section 818.4 provides: "A public entity is not liable for an injury caused by the issuance . . . or by the failure or refusal to . . . suspend or revoke, any . . . license . . . where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." Pursuant to that immunity, the State is not liable where DMV has made a discretionary determination that a driver can safely operate a vehicle. (See *Trewin* v. *State of California, supra*, 150 Cal.App.3d at pp. 980-981.) Similarly, where the State has no information about a driver's impairment, the State's licensing activity is immune. (See *ibid.*)

The licensing immunity of Government Code section 818.4 is limited by Government Code section 815.6, however, which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (See *Johnson* v. *Mead* (1987) 191 Cal.App.3d 156, 159 [236 Cal.Rptr. 277].) ▮ Accordingly, despite the licensing immunity of Government Code section 818.4, the State may be liable under Government Code section 815.6 "if it has determined *beforehand* that the person is unable to safely operate a motor vehicle upon a highway . . . ." (*Trewin* v. *State of California, supra*, 150 Cal.App.3d at p. 981.)[5]

▮ We therefore examine the facts established in the summary judgment pleadings to determine if there is a triable issue of fact whether the State had made a finding or determination that Campbell was "unable to safely operate a motor vehicle" as a result of the October 1989 accident. (See *Johnson* v. *Mead, supra*, 191 Cal.App.3d at p. 160 [discussing sufficiency of pleadings upon general demurrer].)

---

[5]We reject Wilson's contention that *Trewin* and *Johnson* conflict. They do not. (*Gray* v. *State of California* (1989) 207 Cal.App.3d 151, 157-158 [254 Cal.Rptr. 581].)

Simply stated, there is no such evidence, and real parties do not assert there is.[6] Real parties do assert there was evidence sufficient to establish that DMV had constructive notice that Campbell was suffering from diabetes, that Officer Bravo had determined Campbell could not safely operate a motor vehicle, and that DMV failed to take administrative steps that would have led to discovery of Campbell's medical condition. Evidence of the sort relied upon by real parties, however, is insufficient to establish a mandatory duty as described in the cases discussed above.

The problem for real parties in interest is that all of the information they rely upon is at most sufficient to invoke DMV's duty to exercise its preliminary discretion to investigate and evaluate Campbell's condition. Even if we conclude that Bravo's full knowledge (as established in the record on summary judgment) should be attributed to DMV, such information would only require DMV to seek medical records and further examination of Campbell *to determine* whether he could safely operate a vehicle. Mere knowledge that Campbell had diabetes and that it resulted in an accident does not automatically require revocation or suspension of a driver's license. (See *Smith* v. *Department of Motor Vehicles, supra,* 163 Cal.App.3d at p. 328.)

Nor does Bravo's failure to request reexamination establish a basis for liability under Government Code section 815.6. Although California Highway Patrol general order 100.66 says that the request for reexamination "shall" be completed on certain conditions, that order implements the *discretionary* duty established in Vehicle Code section 21061 ("a traffic officer may issue a notice of reexamination").[7] Real parties have not established that the general order is a duly adopted administrative regulation or is otherwise an "enactment" as contemplated by Government Code section 815.6. (See Gov. Code, §§ 810.6 and 811.6.) Under these circumstances, the general order does not create a mandatory duty as contemplated in Government

---

[6]There was evidence that Campbell's insulin use was under active review and adjustment by his doctor, which could indicate that DMV action under Vehicle Code section 12805 was not a foregone conclusion, i.e., that even if Bravo had requested reexamination, the evidence might have allowed restricted licensing under Vehicle Code section 12806. The point, of course, is not that the evidence establishes Campbell would still have been driving if Bravo had requested reexamination; instead, the point is that the evidence does not establish that revocation would have followed any more inexorably in actual practice than it would have in legal theory.

[7]Vehicle Code section 21062 provides that an officer issuing a notice of reexamination "shall" process it within certain time limits. That duty is subsidiary to the discretionary duty to issue the notice in the first instance under Vehicle Code section 21601. The duty to promptly transmit the notice is not relevant in the present case, since the traffic officer did not exercise his discretion to issue such a notice of reexamination.

Code section 815.6. (*Posey* v. *State of California* (1986) 180 Cal.App.3d 836, 848-851 [225 Cal.Rptr. 830].)[8]

In summary, we conclude that neither DMV nor any other state agent or agency determined that Campbell could not safely operate a motor vehicle. ██ ▬██ ██ Accordingly, real parties failed to establish the existence of a mandatory duty to revoke Campbell's driver's license pursuant to Vehicle Code section 21061.[9]

## DISPOSITION

The petition is granted. Let a writ of mandate issue directing respondent court to vacate its order of February 11, 1993, and to enter a new order granting petitioner's motion for summary judgment. Petitioner to recover costs.

Best, P. J., and Martin, J., concurred.

---

[8]Likewise, Talitha Campbell's contention that if the DMV had entered into its records the correct "accident responsibility code" a reexamination would have been scheduled must be rejected. She cites no enactment establishing a mandatory duty to record such codes. Further, even if a proper code had invoked a DMV duty, it was only the discretionary duty to reexamine, not the mandatory duty to revoke after concluding the driver cannot safely operate a motor vehicle.

[9]Campbell's contention the State is liable on a "special relationship" theory was not pleaded in the complaint and was not raised below. As such, it may not be asserted on appeal.