Filed 3/5/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| A.K. ANDERSON, | E069398 |
| Plaintiff and Appellant, | (Super.Ct.No. CIVDS1621596) |
| v. | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| JEAN SHIOMOTO, as Director, etc., | |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT

The court has reviewed the petition for rehearing filed February 25, 2019. The petition is denied. The opinion filed in this matter on February 8, 2019, is modified as follows:

On page 3, section I.A., the subheading and first paragraph are deleted and replaced with the following:

A.    *DMV Administrative Actions—July 2006 to October 2012*

Anderson came to the attention of the DMV when it received a confidential morbidity report from Community Hospital of San Bernardino, indicating Anderson

suffered from a seizure on June 6, 2006.  On July 13, 2006, the DMV mailed Anderson a notice of reexamination, asking him to have his doctor fill out medical forms. The deadline was August 6, 2006, in order to avoid having his license suspended as of August 7, 2006.  (*Anderson I*, *supra*, E059981.)

There is no change in the judgment.

CERTIFIED FOR PUBLICATION

McKINSTER
Acting P. J.

I concur:

MILLER
J.

RAPHAEL
J.

2

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| A.K. ANDERSON, | |
| Plaintiff and Appellant, | E069398 |
| v. | (Super.Ct.No. CIVDS1621596) |
| JEAN SHIOMOTO, as Director, etc., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. David Cohn, Judge. Affirmed.

A.K. Anderson, in pro. per., for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Kenneth C. Jones and Eric M. Fox, Deputy Attorneys General, for Defendant and Respondent.

In a prior appeal, this court affirmed a judgment denying A.K. Anderson's petition for writ of mandate challenging the September 15, 2012, suspension of his driver's license by the Department of Motor Vehicles (DMV). (*A.K. Anderson v. George Valverde* (June 12, 2015, E059981) [nonpub. opn.] (*Anderson I*).) We concluded the record contained substantial evidence that Anderson had been diagnosed by a neurologist with a seizure disorder, and that he had voluntarily discontinued taking anti-seizure medication.

After our first decision became final, Anderson submitted to the DMV a report prepared by a family practice physician that purported to demonstrate Anderson suffered from no medical ailments whatsoever, and that he required no medications. A traffic safety officer concluded the report did not demonstrate Anderson no longer suffered from a seizure disorder, and the officer ordered that Anderson's license remain suspended as of September 15, 2012. Anderson once again unsuccessfully petitioned the superior court for a writ of mandate challenging his original license suspension and the order refusing to lift the suspension.

On appeal, Anderson again challenges the original suspension of his driver's license, and he argues the DMV could not refuse to reinstate his driver's license under Vehicle Code section 12806, subdivision (c) (§ 12806(c)), because there is no evidence he suffered a seizure or a lapse of consciousness within the last three years.

2

Anderson's challenge to the original license suspension was determined finally in his appeal from the denial of his first petition for writ of mandate, so he is barred from relitigating it again in this appeal. The plain language of section 12806(c) demonstrates the DMV may refuse to issue or renew a driver's license to three categories of motorists, including those who suffer from "a disorder characterized by lapses of consciousness." The requirement of a seizure or a lapse of consciousness within the last three years only applies to motorists who suffer from "any condition which may bring about recurrent lapses." (*Ibid*.) Because we conclude the record contains substantial evidence that Anderson suffers from "a disorder characterized by lapses of consciousness" (*ibid*.), we affirm the judgment.

I.

FACTS AND PROCEDURAL BACKGROUND[1]

A.      *The Accident and DMV/Administrative Actions—July 2006 to October 2012.*

As best we can determine from the record, on or about July 13, 2006, Anderson was involved in an automobile accident. On July 13, 2006, the DMV mailed Anderson a notice of reexamination, asking him to have his doctor fill out medical forms. The deadline was August 6, 2006, in order to avoid having his license suspended as of August 7, 2006. (*Anderson I*, *supra*, E059981.)

_____

[1] Much of the procedural and factual background in this appeal has already been recounted in this court's prior decision in *Anderson I*, *supra*, E059981. On our own motion, we take judicial notice of our prior unpublished opinion. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

On January 14, 2008, the DMV issued an order of suspension informing Anderson that his driving privilege would be suspended as of January 18, 2008. The DMV issued the suspension under Vehicle Code section 13801 because Anderson had not completed the reexamination process. (*Anderson I*, *supra*, E059981.)

The DMV held administrative hearings on January 14, September 16, and September 17, 2012. A notice of findings and decision, dated September 18, 2012, withdrew Anderson's privilege to operate a motor vehicle effective September 15, 2012. Further, a hearing report, also dated September 18, 2012, made the following findings of fact: Anderson's ability "to operate a motor vehicle safely is affected because of a disorder characterized by lapses of consciousness or control . . . . [Anderson] discontinued taking anti-seizure medications . . . . His neurologist feels [Anderson] is at risk for another seizure and has advised against driving. Per medical evidence and opinion, [Anderson] poses an immediate threat to traffic safety and should not be driving for his safety and that of others on the roadway." The hearing report described that Anderson "rambled on" at the hearing regarding doctors and a woman claiming that Anderson had a seizure in his sleep. More important for the purposes of this appeal, Anderson "presented no affirmative evidence or testimony to rebut the department's evidence in this hearing." (*Anderson I*, *supra*, E059981.)

The DMV conducted a departmental review and mailed Anderson a notice of decision on October 3, 2012, in which it affirmed its order of suspension. (*Anderson I*, *supra*, E059981.)

4

B.      *Writ of Administrative Mandate Proceedings—October 2012 to October 2013.*

On October 29, 2012, Anderson, acting in propria persona, filed in the superior court a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5. (*Anderson I*, *supra*, E059981.)

On July 15, 2013, Anderson filed in the superior court a petitioner's statement of intention in which he requested the restoration of his driving privilege and $25,000 with interest.  Anderson also requested to "[o]btain[] the accountability of my life with property, monetary, and liability reimbursement" and to "proceed with discovery in this case and other cases."  Anderson further stated that he did not have a seizure on July 13, 2006, as "one or more doctors have claimed," but rather he was assaulted on the job. (*Anderson I*, *supra*, E059981.)

On July 26, 2013, the DMV filed its opposition to the writ petition.  The DMV argued Anderson had not carried his burden to show that the challenged DMV decision was incorrect.  (*Anderson I*, *supra*, E059981.)

The hearing on the writ petition was held on August 16, 2013.  The superior court referred to the neurologist's report of September 5, 2012, stating that Anderson had suffered seizures within the previous three years and that he refused to take anti-seizure medications, which put him at risk of having another seizure.  It also referred to Anderson's admission to the hearing officer that he was not taking his medication and to his claim, unsupported by any evidence, that his doctors had misdiagnosed him.  The court stated that "the overwhelming weight of the evidence" supported the DMV

5

decision. After hearing from Anderson, the court denied the petition. (*Anderson I*, *supra*, E059981.)

On October 28, 2013, the superior court entered judgment on its denial of the writ petition. (*Anderson I*, *supra*, E059981.)

On June 12, 2015, this court affirmed the judgment in Anderson's first administrative mandate proceeding, concluding, inter alia, that the judgment was amply supported by the evidence provided by Anderson's treating physician. (*Anderson I*, *supra*, E059981.) We rejected Anderson's unsupported assertion that he had been misdiagnosed, stating: "It was up to Anderson to arrange for another complete medical examination and report prior to the DMV hearing to counteract the report from his treating physician. He did not do this." (*Ibid.*)

C.      *Interview and Additional DMV/Administrative Actions—June to November 2016.*

On June 23, 2016, Anderson submitted to the DMV a driver medical evaluation (DME) form. On the portion of the form to be completed by the motorist, Anderson denied he had a history of "[s]eizure, convulsions or epilepsy" or that he was "[c]urrently taking medications." Anderson repeated his assertion that his license had been suspended based on hearsay and a misdiagnosis of epilepsy and a seizure disorder. The remainder of the form was completed and signed on June 23, 2016, by Cyrus Damirchi, M.D., who listed his specialty as "Family Practice." Dr. Damirchi indicated that Anderson had been a patient since April 2016, and that Anderson's last examination took place on April 5, 2016. Dr. Damirchi noted that Anderson had "no medical conditions" and had been

6

prescribed "no meds." The physician recommended that Anderson be given a driving test.

On July 21, 2016, the DMV mailed a notice to Anderson informing him of a scheduled telephone appointment on July 27, 2016. The record does not disclose whether Anderson completed the interview.

On August 25, 2016, the DMV informed Anderson that he had failed to appear for an in-person interview scheduled for that same day. Consequently, the DMV ordered that Anderson's license "remain suspended" effective September 15, 2012.

Anderson appeared for an in-person interview on September 13, 2016, to determine whether his ability to safely operate a motor vehicle was still affected by a condition characterized by a lapse of consciousness or control. During the interview, Anderson again denied having a seizure on June 6, 2006; he denied that he ever suffered a seizure or a lapse of consciousness; and he claimed that the genesis of his misdiagnosis with a seizure disorder was a lie his ex-wife told paramedics following a verbal confrontation. Anderson said that in 2008, he started taking Keppra and Dilantin on the advice of his doctor, but he stopped taking the medication in 2011 "as he was not aware that it was to treat him for Epilepsy." Anderson also stated he had been "manipulated into taking medications," but he did not elaborate on the allegation "or provide any additional details as to why he was taking the medication for three (3) years."

The driver safety officer who conducted the interview concluded Anderson "has a history of lapses of consciousness or control. Although he denies having seizures, [Anderson] was taking anti-seizure medication for three years. Further, the DME he

7

submitted is from a treating physician reporting no medical conditions and which is a contradiction with his past medical history." Based on those findings, the DMV ordered that Anderson's license remain suspended as of September 15, 2012.

D.  *Writ of Administrative Mandate Proceedings—December 2016 to October 2017.*

On December 20, 2016, Anderson, again acting in propria persona, filed a second petition for writ of administrative mandate under Code of Civil Procedure section 1094.5.

In an opening brief filed on May 30, 2017, Anderson claimed the original suspension of his license was based on the word of a drunken liar. "The entire 'lapse of consciousness' set of allegations started on June 6, 2006, when after a heated argument with [Anderson's] ex-girlfriend,[2] drunk on Old English 800 beer, [the ex-girlfriend] said to Rialto paramedics that [Anderson] was 'having seizures.' Anderson was never epileptic, and he never had any form of seizures [or] lapses of any kind."

Anderson quoted section 12806(c), which provides in relevant part that the DMV may refuse to issue or renew a driver's license to any motorist "[w]ho has a disorder characterized by lapses of consciousness or who has experienced, within the last three years, either a lapse of consciousness or an episode of marked confusion caused by any condition which may bring about recurrent lapses . . . ." According to Anderson, although the neurologist reported that Anderson suffered a seizure in 2012, "[t]here is *NO* report or other documentation stating [Anderson] had a seizure or lapse between 2013 and the present." To the contrary, Anderson argued his "last doctor stated he has no

_____

 **2** Throughout this case, Anderson was inconsistent in attributing the lie to his ex-wife or to his ex-girlfriend.

8

medical condition impairing the ability to drive." Anderson concluded by stating, "It's time to end this Old English 800 nonsense, and allow [me] to take a driving test again."

In an opposition filed on June 23, 2017, the DMV argued the order continuing the suspension of Anderson's driver's license was amply supported by the evidence and did not constitute an abuse of discretion. According to the DMV, Anderson "was requested to submit a medical report from a neurologist familiar with his condition. The one he submitted was clearly based on incomplete history and was not sufficient to demonstrate that his seizure condition is under control." The DMV stated it would consider reinstating Anderson's driver's license "provided he is truly seizure free and medically cleared to drive. However, that determination can only be based on a medical opinion from a neurologist familiar with [Anderson's] full medical history."

At the hearing on Anderson's petition held on August 4, 2017, the superior court stated its tentative decision was to deny the petition. "You have a long, well-documented history of a seizure disorder, with reports to the DMV from various healthcare providers, hospitals, and other institutions. Your denial of having a seizure disorder is—I don't mean to be disrespectful when I say this—but it is not credible in light of this amply documented history." The court indicated it did not find Anderson's DME to be persuasive evidence to the contrary. "[T]hat physician was a family practitioner, not a neurologist, [who] saw you once, and [who] did not have an opportunity to review any of your medical records." The court characterized as a "misunderstanding" Anderson's argument that the DMV had the burden to show he "had an incident involving a loss of consciousness within the last three years." The court noted the DMV could also deny

9

Anderson his driving privilege if it concluded he had "a physical or mental disease which could make it unsafe to operate a vehicle." Exercising its independent judgment, and giving no "particular deference" to the DMV's decision, the court stated the evidence supported the conclusion that Anderson's "seizure disorder" was such a physical or mental disease.

Anderson repeated the argument made in his brief that his original misdiagnosis with a seizure disorder was based on false information from "a female who was drunk." The superior court indicated it was not inclined to change its tentative decision and denied Anderson's petition.

On August 9, 2017, the superior court entered judgment against Anderson and in favor of the DMV.

Anderson timely appealed.

## II.

## DISCUSSION

"'When a person petitions for a writ of mandate following an order suspending his or her driver's license, the [trial] court is required to determine, based on the exercise of its independent judgment, whether the weight of the evidence supports the administrative decision. [Citations.] In making that determination, the court acts as a trier of fact; it has the power and responsibility to weigh the evidence and make its own determination about the credibility of witnesses. [Citation.] The administrative findings, however, are entitled to "a strong presumption of correctness," and "the party challenging the administrative decision bears the burden of convincing the court that the administrative

findings are contrary to the weight of the evidence.""" (*Espinoza v. Shiomoto* (2017) 10 Cal.App.5th 85, 99-100.)

"'On appeal, we review the record to determine whether the court's findings are supported by substantial evidence. ""We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings.""""" (*Espinoza v. Shiomoto*, *supra*, 10 Cal.App.5th at p. 100.)

"'An appealed judgment is presumed to be correct. We will indulge all intendments and presumptions to support the judgment on matters as to which the record is silent and prejudicial error must be affirmatively shown.'" (*Espinoza v. Shiomoto*, *supra*, 10 Cal.App.5th at p. 100.) "Finally, 'we will affirm a judgment correct on any legal basis, even if that basis was not invoked by the trial court. [Citation.] There can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct.'" (*Ibid.*)

The DMV "is not required to show it was right." (*Elizabeth D. v. Zolin* (1993) 21 Cal.App.4th 347, 355.) Rather, Anderson has the affirmative obligation to demonstrate error and must overcome the strong presumption of correctness that attaches to the superior court's ruling. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 812.)

As he did in the superior court, on appeal, Anderson once again argues the original suspension of his driver's license was "based on false statements from [his] ex-wife [or ex-girlfriend (see, *ante*, fn. 2)] who was drunk on Old English 800 beer," and that he was never an epileptic, and never suffered seizures or a lapse of consciousness. That issue has already been conclusively and finally decided against Anderson. In the prior appeal, this court concluded the record contained substantial evidence to support the superior court's denial of Anderson's petition for writ of mandate challenging the original suspension of his driver's license. (*Anderson I*, *supra*, E059981.) On August 26, 2015, the California Supreme Court denied Anderson's petition for review (case No. S227977), and we issued our remittitur on September 1, 2015. Anderson is, therefore, barred from relitigating the propriety of the original license suspension. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 848-849.)

With respect to the judgment that is actually on appeal—the judgment denying Anderson's petition for writ of mandate challenging the DMV's order declining to lift Anderson's license suspension and leaving it in place as of September 15, 2012— Anderson argues the record contains no evidence that he suffered any seizures or lapses of consciousness in the last three years and, therefore, the superior court should have granted his petition. Anderson's argument is premised on the assumption that the DMV may only refuse to issue or renew a driver's license under section 12806(c) if the motorist has suffered a seizure or a lapse of consciousness within the previous three years.

12

Whether section 12806(c) limits the DMV's discretion as Anderson contends is a question of statutory interpretation that we review de novo. (*Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1546.) "The fundamental principle of statutory interpretation is 'the ascertainment of legislative intent so that the purpose of the law may be effectuated.'" (*Pollack v. Department of Motor Vehicles* (1985) 38 Cal.3d 367, 372.) "In interpreting statutes, if the 'language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature.'" (*Rehman v. Department of Motor Vehicles* (2009) 178 Cal.App.4th 581, 586.)

As relevant here, the DMV "may"[3] refuse to issue or renew a driver's license to any person who "[(1)] has a disorder characterized by lapses of consciousness or [(2)] who has experienced, within the last three years, either a lapse of consciousness or an episode of marked confusion caused by any condition which may bring about recurrent lapses, or [(3)] who has any physical or mental disability, disease, or disorder which could affect the safe operation of a motor vehicle unless the department has medical information which indicates the person may safely operate a motor vehicle."[4] (§ 12806(c).)

---

[3] In contrast, the DMV "shall not" issue or renew a license to a motorist "[w]hen it is determined, by examination or other evidence, that the person is unable to safely operate a motor vehicle upon a highway." (Veh. Code, § 12805, subd. (a)(4); see *People v. Superior Court* (*Wilson*) (1993) 18 Cal.App.4th 31, 36 ["upon making a determination the driver cannot drive safely, DMV is mandated to terminate driving privileges"].)

[4] In determining whether a motorist falls within the descriptions contained in section 12806(c), the DMV "may rely on any relevant information available to the department." Presumably, "any relevant information" includes reliable hearsay.

As demonstrated by our addition of numbers 1 through 3 in brackets, section 12806(c) lists three distinct categories of motorists separated by the word "or." "[T]he plain and ordinary meaning of the word 'or,' when used in a statute, is to designate separate, disjunctive categories. [Citation.] The word 'or' suggests alternatives. [Citation.] In its ordinary sense in a statute, '""the function of the word "or" is to mark an alternative such as "either this or that.""'"" (*In re E.A.* (2018) 24 Cal.App.5th 648, 661.) The requirement of a seizure or a lapse of consciousness within the last three years applies solely to the second category of motorists, to wit, those who suffer from "any condition which may bring about recurrent lapses." (§ 12806(c).) No such requirement applies to the first and third categories of motorists, viz, those who suffer from "a disorder characterized by lapses of consciousness"[5] or who have "any physical or mental disability, disease, or disorder which could affect the safe operation of a motor vehicle." (*Ibid.*)

---

[5] The DMV has adopted regulations to govern the license suspension or revocation of motorists who have "a disorder characterized by lapses of consciousness or episodes of marked confusion," which affect the motorist's ability to safely operate a motor vehicle. (Cal. Code Regs., tit. 13, § 110.01; see *id.*, §§ 110.02-118.00.) In turn, those regulations incorporate the definition of "a disorder characterized by lapses of consciousness or episodes of marked confusion" adopted by the State Department of Health Care Services (DHCS). (*Id.*, §§ 110.01-110.02.)

DHCS defines "[d]isorders characterized by lapses of consciousness" as "medical conditions that involve: [¶] (1) a loss of consciousness or a marked reduction of alertness or responsiveness to external stimuli; and [¶] (2) the inability to perform one or more activities of daily living; and [¶] (3) the impairment of the sensory motor functions used to operate a motor vehicle." (Cal. Code Regs., tit. 17, § 2806(a); see Health & Saf. Code, § 103900.) Notably absent from that definition is a requirement that the individual have suffered a seizure or a lapse of consciousness within the past three years.

Like Vehicle Code section 12806(c) (see, *ante*, fn. 4), the DMV's regulations permit the DMV to consider "[a]ny other relevant evidence" when determining whether a

*[footnote continued on next page]*

14

The administrative record that was presented to the superior court in this case contains much of the record that was presented with Anderson's first petition. In other words, the court once again had before it evidence that Anderson's treating neurologist had diagnosed Anderson with a seizure disorder, and that Anderson had voluntarily discontinued taking anti-seizure medication. The DME submitted by Anderson purported to demonstrate that he did not suffer from any medical ailments whatsoever, and that he required no medications. But the court (and the DMV) expressly discounted the evidentiary weight to be given to the DME because the family practice physician who prepared it had only examined Anderson once, and it did not appear that the physician had reviewed Anderson's complete medical history. We are not free to reweigh the evidence, and we are bound by that determination. (*Espinoza v. Shiomoto*, *supra*, 10 Cal.App.5th at p. 100.)

The superior court concluded the DMV properly refused to lift Anderson's license suspension because he fell within the class of motorists who suffer from "any physical or mental disability, disease, or disorder which could affect the safe operation of a motor vehicle." (§ 12806(c).) We hold substantial evidence supports the conclusion that Anderson falls within the first category of motorists described in that statute because he suffers from "a disorder characterized by lapses of consciousness." (*Ibid*.) Therefore,

---

*[footnote continued from previous page]*
motorist has a disorder characterized by a lapse of consciousness. (Cal. Code Regs., tit. 13, § 110.01(h).)

15

although we disagree with the superior court's reasoning, we agree with its ultimate decision—that the DMV did not err by refusing to lift Anderson's license suspension.

## III.

## DISPOSITION

The judgment is affirmed.  In the interest of justice, the parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

CERTIFIED FOR PUBLICATION

McKINSTER
Acting P. J.

We concur:


MILLER
J.


RAPHAEL
J.

17