Filed 5/24/22  Tiffany H. v. Craig K. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TIFFANY H., <br><br> Plaintiff and Respondent, <br> v. <br> CRAIG K., <br><br> Defendant and Appellant. | A163691 <br><br> (Humboldt County <br> Super. Ct. No. FL1900994) |

Craig K. appeals from orders denying his request for a domestic violence restraining order (DVRO) protecting him from former girlfriend Tiffany H. and instead granting Tiffany's petition for a DVRO protecting her from Craig.[1]  Craig contends the trial court erred when it (1) excluded evidence of events that predated the incident underlying Tiffany's previous DVRO issued against him after a hearing; (2) failed to enforce his untimely subpoena for police reports; (3) declined to hear testimony from his witnesses;

---

[1] Because this case involves proceedings under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.), we refer to the parties by first name and last initial to protect the parties' privacy interests.  (Cal. Rules of Court, rule 8.90(b)(1), (b)(11).)  For ease of reading, we omit the parties' last initial in subsequent references.  We intend no disrespect.

1

and (4) considered events that occurred while the prior DVRO was in effect.[2] His contentions are meritless, so we affirm.

## BACKGROUND

In the summer of 2019, four or five years after they first briefly dated, Craig and Tiffany resumed their relationship. They became engaged that September, but the relationship soon devolved into rancor and violence. On October 28, 2019, Arcata police responded to a report of a domestic dispute at Craig's home. Craig and Tiffany accused each other of physical assault, but only Craig had visible injuries. Tiffany was arrested and, after her release, spent 40 days at a mental health facility before moving into a domestic violence shelter.

In December 2019, Tiffany filed a request for a DVRO, citing, among other things, the October 28 incident, an altercation in Los Angeles earlier that month, sexual abuse, and a history of stalking behavior. Craig denied her allegations. After a contested hearing on January 22, 2020, the court granted a DVRO requiring Craig to stay away from Tiffany for one year (the January 2020 DVRO). The DVRO expired by its terms on January 22, 2021, after Tiffany's request to renew it was rejected for failure to file required forms.

On March 30, 2021, Tiffany filed a request for a new DVRO based on multiple allegations of abuse, including some that predated the issuance of the January 2020 DVRO. In January 2020, Tiffany had discovered that Craig was following her Yelp account. Tiffany alleged Craig had called the domestic violence shelter where she was living at least five times "to

---

[2] Craig also asks this court to reverse the earlier domestic violence restraining order issued in January 2020. However, at oral argument, Craig conceded such an order would exceed our authority. Accordingly, we deny the request without further discussion.

badmouth me to staff and get me kicked out," and thought she had recently seen Craig outside of her home and running away down her street.

Tiffany represented that in July 2020 she went to Craig's house to retrieve items she had left behind when she moved out. She alleged the attic where her property was stored had been ransacked and her belongings stolen. Craig was not there, but his nephew handed her a letter from him that included instructions for retrieving her belongings from a storage unit and "a romantic sentiment even though we were no longer in a relationship." In November and December of 2020, various household items were left on Tiffany's doorstep; she also received Amazon packages that she had not ordered.[3] Amazon customer service informed her the packages had been ordered by someone using the address she knew to be Craig's. On March 24, 2021, Tiffany found boxes of "old junk," including a rusty dog cage, cat litter, books, and clothes outside of her home by her car. Craig e-mailed her that he had left the items. Tiffany was disturbed because she was enrolled in a confidentiality program meant to hide her address.

On April 19, 2021, Craig filed his own request for a DVRO.[4] He, like Tiffany, alleged the most recent abuse occurred in March 24, 2021, but described a different event: he alleged that Arcata police officers advised him that Eureka police had apprehended Tiffany driving to his house "with the intent they believed to kill me." Craig also described multiple "untruths" and incidents he identified as emotionally or physically abusive or defamatory, including his own version of the events described in Tiffany's request. Craig

---

[3] Testimony at the hearing established that these events occurred in November 2020.

[4] Craig subsequently amended this request, primarily to omit some, but not all, of the incidents that had been addressed at the hearing on the January 2020 DVRO.

argued that this pattern of "unwanted conduct" warranted the issuance of a restraining order protecting him from Tiffany. Each party opposed the other's DVRO request. Craig filed a witness list identifying 13 potential witnesses.

On August 9, 2021, after a 60-day continuance, the court held a combined hearing on both requests. Tiffany was represented by counsel; Craig represented himself.

The court first addressed Craig's attempt to serve a subpoena duces tecum seeking police reports from the Eureka Police Department. Counsel from the Eureka City Attorney Department explained they had not produced the requested police reports because the subpoena was untimely under Code of Civil Procedure section 1985.3.[5] The city attorney had informed Craig of the defect in writing on July 26, but since that time Craig had failed to properly effect service. "But once he does comply," they represented, "we are more than happy to produce the documents requested."

Craig said he believed the city attorney's department had indicated that two days' notice would be sufficient, but he offered to redo his subpoena if necessary. He also suggested that Tiffany might agree to waive the untimely service.[6] Tiffany did not respond to this comment, and the court did not ask for her waiver. The court excused the city attorney and Eureka Police Officer Hooks, who had appeared at the city attorney's behest to answer the court's questions, if any, about processing the subpoena. Tiffany's counsel

---

[5] Further undesignated statutory citations are to the Code of Civil Procedure. Pursuant to sections 1985.3, subdivision (b)(2) and 1013, Craig was required to serve the subpoena duces tecum on Tiffany not less than 10 days prior to the date of production, plus five days for service by mail.

[6] As the city attorney explained, the notice deficiency meant "Ms. Hall hasn't been given her statutory time to object to the request."

4

informed the court that a three-year criminal restraining order had been issued on April 22, 2021.

After the parties were sworn, the court questioned Craig about Tiffany's allegations. As to the July 10, 2020 incident when Tiffany attempted to retrieve her belongings from his house, found them gone, and received Craig's note, Craig said he had moved most of her things into storage "because I had a feeling that she might want them." He made arrangements to be away from the house when she came over and left her a key and a three-page letter with instructions for accessing the storage unit. In the letter, which began with his observation that it probably violated the DVRO, Craig apologized for his behavior and attempted to clear up what he felt were misunderstandings that had contributed to the present situation.

The court turned to the parties' parallel allegations regarding the handling of property in October or November 2020. Tiffany alleged that in early November Craig had left property by her door in violation of the January 2020 DVRO. Craig alleged and testified that in October 2020, Tiffany had falsely reported to police that he had violated the January 2020 DVRO by leaving belongings by her door, when in fact his friend Lisa Cosco had volunteered to deliver Tiffany's property because Craig was "tired of having it around." Craig stated he responded to Cosco's offer by saying, "I can't stop you. I never said will you. I just told her that I didn't like it there and she was there all the time. If you knew Lisa [Cosco] you would understand this. I was very meticulous to not violate that restraining order."

More generally, Craig argued that Tiffany's allegations concerning anonymous package deliveries and online and other contacts were untrue;

5

Tiffany was trying to get his probation[7] revoked by, in part, filing false police reports and applications for restraining orders.

The court asked the parties if there was any reason for further contact between them. Tiffany said there was not; Craig said, "It's okay that there is no contact between us as long as I'm safe" from "the threat of [Tiffany] using the legal system to try to harm me."

The court questioned Craig about his allegation that police officers told him Tiffany had threatened to kill him in March 2021. Defective subpoenas prevented him from introducing an unredacted police report, but the court explained that Craig could testify about the incident—with the proviso that "that's going to be objected to as hearsay."[8] As to the November 2020 incident, Craig denied having dropped items off at Tiffany's home; he "never went to that house." In response to the court's questions, Tiffany testified that she found her belongings (a cat tree, a set of dishes, and books) on her doorstep on the morning of November 3, 2020. She believed Craig had left them there and reported it to police as a violation of the January 2020 DVRO.

At that point the court denied Craig's request for a DVRO, "because I don't see any evidence today of domestic violence against you."

Turning to Tiffany's request for a DVRO, the court agreed with Craig's assertion that the allegation of his following her on Yelp was irrelevant

---

[7] Craig explained his probation was related to "some DUIs and I already had a violation because of a suspended license thing that was dismissed."

[8] Craig said he had subpoenaed Officer Hooks, the report's author, to testify about the event, but the record on appeal does not contain such a subpoena or otherwise indicate that Craig subpoenaed the officer to testify. The court denied Craig's request, mid-hearing, to continue the matter so that he could properly subpoena Officer Hooks, but Craig has raised no issues on appeal regarding the denial of the continuance request.

because it was covered in the January 2020 DVRO hearing.  Tiffany testified that three Amazon packages were delivered to her home in November 2020: a book about false memory, another book about women who abuse, and an "adult coloring book."  Amazon customer service would not confirm the name of the person who ordered the packages but verified that Craig's address was associated with the orders.  In addition, some of her belongings were left on her doorstep.

The court stated that there was no need for further evidence about the missing belongings and note left for Tiffany on July 10, 2020 because it had sufficient evidence to find two independent violations of the January 2020 DVRO:  the items left on Tiffany's doorstep in November 2020 and the Amazon packages she received the same month.  The court explained to Craig:  "It's clear to the court that not only I think you are not being honest with me, I think it would be even faced with that your address was the address that the order came from to send these books, you are still implying it wasn't you.  So you are not being honest with the court.  And I find your credibility is severely lacking.  So for that reason, I don't need any comment.  [¶] . . .  [¶] You have had a chance.  No, you . . . had a chance to tell me what is happening.  You have not shown domestic violence.  You have now indicated there is no reason for you to contact her for any reason whatsoever.  There is no reason for you to have any contact, send her anything, send her books.  While [under] a domestic violence restraining order, you sent her books about women who abuse.  So you are basically blaming the victim after a judicial finding."

The court granted Tiffany's request for a five-year DVRO and dismissed Craig's action.  Craig filed a timely notice of appeal.

## DISCUSSION

I.    *The court properly excluded evidence of events that occurred prior to the first DVRO.*

At the hearing, the court stated it would not consider any allegations of abuse that occurred before the January 22, 2020 hearing date on the prior DVRO. Craig pointed out that he had not applied for a restraining order at that time; the court responded that "[t]hat was your opportunity to do that. And the opportunity to bring those facts in front of the court."

Craig contends this was legal error. Asserting the court's ruling was premised on res judicata, he argues the principle did not apply to him because only Tiffany, not he, sought a DVRO in 2020. The argument fails. Preliminarily, Craig forfeited the issue by failing to object on that (or any other) ground at the hearing. (*Santa Clara Waste Water Co. v. Allied World National Assurance Co.* (2017) 18 Cal.App.5th 881, 885; *People v. Boyette* (2002) 29 Cal.4th 381, 457.) Even so, the record does not evidence Craig's speculative assertion that the court ruled on the basis of res judicata. "The very settled rule of appellate review is a trial court's order/judgment is presumed to be correct, error is never presumed, and the appealing party must affirmatively demonstrate error on the face of the record." (*People v. Davis* (1996) 50 Cal.App.4th 168, 172; *Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 509.) This rule of appellate practice also defeats Craig's related argument that the court erroneously believed Tiffany's January 2020 DVRO request "create[d] a compulsory cross-claim" under section 426.10 et seq., thereby subjecting him to a res judicata bar even though only Tiffany sought the order. Again, the record reflects no such ruling or reasoning.

In any event, we affirm a judgment if correct on any legal basis, even if that basis was not invoked by the trial court. (*Anderson v. Davidson* (2019) 32 Cal.App.5th 136, 144.) Here the court could reasonably have found that

8

events more remote than January 2020 were insufficiently relevant to the current situation to warrant admission. We have no basis to disturb its ruling.

II. *The court properly declined to enforce the defective subpoena.*

Although he does not dispute that his subpoena duces tecum was untimely under section 1985.3, Craig contends the court abused its discretion by failing to (1) sufficiently question the city attorney or either party about a purported "agreement" regarding the subpoena, or (2) ask Tiffany if she would waive the untimely notice. It did not. It is the litigant's responsibility, not the court's, to elicit testimony from witnesses and negotiate agreements with the opposing party, even when self-represented. Equally meritless is Craig's reliance on a provision of section 1985.3 that permits a party to obtain an order shortening time for service of a subpoena duces tecum "[u]pon good cause shown and provided that the rights of witnesses and consumers are preserved." (§ 1985.3, subd. (h).) Craig did not seek an order shortening time and made no showing either of good cause or that Tiffany's rights would not thereby be impinged. There was no error.

III. *The court properly declined to call Craig's witnesses.*

Craig contends the court violated his constitutional right to a fair hearing when it "fail[ed] to hear even one witness," excused three of his potential witnesses, and failed to entertain testimony from a fourth.[9] His first claim is factually wrong; Craig himself testified at considerable length in support of his DVRO request and in opposition to Tiffany's. In addition, the court asked if Lisa Cosco, the friend Craig asserted had volunteered to return

_____

[9] Although Craig's witness list contained 13 names, he can identify only four who were present at the hearing. Accordingly, we will address this argument only as to the witnesses that the record shows he made available to testify.

9

Tiffany's property to her, was available to testify. In response, Craig explained, "She has been coming down I believe with dementia, but there is something going wrong with her"; she was therefore unavailable.

As to the remaining witnesses, Craig has largely failed to identify the testimony he proposed to elicit, elucidate its relevance, or demonstrate any prejudice arising from its omission. "[T]he reviewing court is not required to develop the [appellant's] arguments or search the record for supporting evidence." (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597.) For this reason, we conclude Craig has forfeited any claim of prejudicial error on this point. (See *ibid.*)

In any event, the claim is meritless. Craig identifies the four witnesses he claims were in court and available to testify as Officer Hooks, Arcata Police Officer Tyler Moore, Cara Cardoni (whose intended testimony and relationship to these events is unknown), and an unidentified manager of Tiffany's domestic violence shelter. Officer Hooks appeared at the hearing remotely, at the behest of the city attorney, only to answer questions about processing of police reports referenced in the defective subpoena duces tecum; Craig did not ask to question the officer about the substance of the police reports or other matters and did not object when the court excused the officer. As to Officer Moore and the shelter manager, as best we can tell Craig intended their testimony to refute Tiffany's allegations that he violated the January 2020 DVRO in January and July of 2020. Such testimony was irrelevant to Craig's DVRO request and superfluous to the ruling on Tiffany's request, which the court explicitly premised on two unrelated violations of the January 2020 DVRO. "Unquestionably, the trial court has the power to . . . exclude proffered evidence that is deemed to be irrelevant, prejudicial or cumulative and expedite proceedings which, in the court's view, are dragging

10

on too long without significantly aiding the trier of fact." (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291.) Last, Craig has not identified Cardoni or the subject of her proposed testimony, much less shown that her dismissal without testifying was erroneous or prejudicial.

IV.    *The court properly considered events occurring in 2020.*

Relying solely on dictum in an unpublished opinion (*In re J.T.* (Sept. 22, 2010, H034451) [nonpub. opn.]), and based on unclear reasoning, Craig asserts the court committed legal error when it granted Tiffany's second DVRO request on the basis of events that occurred while the January 2020 DVRO was in effect. Here, too, he is mistaken. With exceptions not applicable here, unpublished opinions of the California Courts of Appeal have no precedential value and may not be cited or relied on. (Cal. Rules of Court, rule 8.115(a); *Barber v. Superior Court* (1991) 234 Cal.App.3d 1076, 1082; *People v. Williams* (2009) 176 Cal.App.4th 1521, 1529.) While a court may reasonably decline to consider events that occurred before a prior DVRO was *issued*, as the court did here,[10] it would defy common sense to bar the court from considering abuse that occurred while a DVRO was in place in deciding whether the facts warrant a new restraining order after the DVRO's expiration.

Nor does it matter that Tiffany's request to renew the January 2020 DVRO was denied on the same day the restraining order expired. Although the renewal request is not included in the record, the court clarified at the hearing, without objection, that "court ops" rejected it on technical grounds

---

[10] As the court explained, "I'm not going to hear any allegations unless they happened after January 22nd of 2020. I have dates of abuse [in Craig's DVRO request] September 2019, November 2019. Any of that would have been litigated October 28th, 2019, back on January 22nd of 2020."

because Tiffany failed to file necessary forms.[11]  The 2020 events that the court found supported Tiffany's second DVRO request thus had not previously been litigated and, accordingly, were not, as Craig seems to argue, barred by principles of res judicata.  There was no error.

## DISPOSITION

The orders granting a DVRO against Craig and dismissing his request for a DVRO against Tiffany are affirmed.  Tiffany is entitled to recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

DESAUTELS, J.[*]

WE CONCUR:

STREETER, Acting P. J.
BROWN, J.

---

[11] She filed the DVRO request at issue here just over two months later, on March 30, 2021.

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.