[Civ. No. 48935. Second Dist., Div. One. Dec. 28, 1976.]

JACK PAPELIAN et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al.,
Defendants and Respondents.

**COUNSEL**

Ralph R. Benson and Herbert B. Schlossberg for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and N. B. Peek, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**WOOD, P. J.—**    Plaintiffs are the surviving husband and children of Paulette Papelian, who was killed in a collision between an auto-

mobile driven by her and an automobile driven by Olleva Lang (who was also killed in the collision). Plaintiffs sought damages against defendant Department of Motor Vehicles on the theory that issuance of a driver's license to Mrs. Lang was, by reason of her age and alleged infirmity, the proximate cause of the collision and of the death of Mrs. Papelian. Defendants' demurrer to the complaint was sustained without leave to amend. Plaintiffs appeal from the order (judgment) dismissing the complaint.

The complaint alleges in substance: On February 11, 1975, the department issued a driver's license to Mrs. Lang, who was born on April 10, 1896. When the license was issued, and subsequently thereto, defendants negligently and wilfully failed to ascertain that Mrs. Lang was a person of advanced years and diminished mental agility to the point of senility, that she was too elderly and senile to be capable of driving a motor vehicle on the streets and highways of the state, and that issuance of driving privileges to her would endanger the lives of other persons lawfully upon said streets and highways. Defendants negligently and wilfully issued the license to Lang, age 78 years, for a period of 5 years without restriction whatsoever and without exercising supervision or control over her. Thereafter, on February 11, 1975, Mrs. Lang was operating her Ford automobile in a northerly direction on Lyons Avenue, in the unincorporated district of Newhall "in a wrong direction," thereby colliding head-on with a vehicle operated by Mrs. Papelian. Mrs. Lang and Mrs. Papelian were killed instantly as a result of said head-on collision. Mrs. Papelian was 50 years of age, was in good physical and mental condition, was a faithful and dutiful wife and mother of the plaintiffs, and was a contributing source of their support. As a proximate result of said wrongful, negligent and wanton acts of the defendants, each plaintiff has been deprived of the society, comfort, services, and support of said decedent and has sustained loss in the amount of $5,000,000. (Other allegations relate to alleged damages for loss of automobile and funeral bills.) Other allegations are in substance that each plaintiff is entitled to punitive damages in the amount of $5,000,000; and that prior to filing the complaint, plaintiffs duly filed official claims for damages with the State Board of Control.

Defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action against them. In substance, defendants asserted that because issuance of the license to

Mrs. Lang by the department was discretionary, the department and the state were immune from liability under sections 818.2 and 818.4 of the Government Code.

The demurrer was sustained without leave to amend; and it was ordered that the complaint be dismissed pursuant to section 581, subdivision 3, of the Code of Civil Procedure.

Section 818.2 of the Government Code provides that a public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law. Section 818.4 of said code provides in part that a public entity is not liable for an injury caused by the issuance of any license or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued.

Article 3 of chapter 1, division 6, of the Vehicle Code (§§ 12800-12817) sets forth provisions for issuance of a driver's license by the department. Those code sections invest discretion in the department in issuance of a driver's license. For example, section 12806, subdivision (a), provides that any physical or mental defect of the applicant which "in the opinion of the department" does not affect the applicant's ability to exercise reasonable control in operating a motor vehicle upon the highway shall not prevent issuance of a license. Section 12805, subdivision (e), provided (prior to July 1, 1976) that the department shall not issue a driver's license to any person who is unable as shown by examination to understand traffic signs or who does not have reasonable knowledge of provisions of this code governing operation of vehicles upon the highways. Subdivision (f) of said section 12805 provided (prior to July 1, 1976)[1] that the department shall not issue a driver's license when it appears by examination or other evidence that such person is unable to operate a motor vehicle upon a highway safely because of physical or mental defect or lack of skill.

It is to be noted further that section 12814 of said code provides in part that the "age of an applicant, by itself, shall not constitute evidence" of a

---

[1]Section 12805 was amended effective July 1, 1976 [Stats. 1975, ch. 659]. Subdivision (e) was not changed other than that it is presently subdivision (d); subdivision (f) was broadened, and is presently subdivision (e).

condition which may affect the ability of the applicant to safely operate a motor vehicle.

In *Hirsch* v. *Department of Motor Vehicles,* 42 Cal.App.3d 252, 257 [115 Cal.Rptr. 452], wherein appellant argued that sections 818.4 and 821.2 of the Government Code, relating to nonliability from injury caused by issuance of " 'any permit, license, certificate' " should be limited to certain instances only, the court said: " 'The remedy for officials . . . who do not adequately enforce existing law, or who do not provide the people with services they desire, is to replace them with other officials. But their discretionary decisions in these areas cannot be subject to review in tort suits for damages if government is to govern effectively.' [Citation.] (Implicit in the foregoing, *Brown*[2] and *Burns*[3] and the other cases in which the question of immunity arose [citations], is the statutory imposition of immunity against tort liability for denial, issuance or revocation of permits, licenses, certificates or other authorizations pursuant to the state police power.)"

In *Elson* v. *Public Utilities Commission,* 51 Cal.App.3d 577, 582, 583 [124 Cal.Rptr. 305], the court discussed (p. 582) the "immunity given to licensing decisions by section 818.4," and said (p. 583): "The sovereign immunity abolished in *Muskopf* [4] was based on grounds entirely different from those relied upon for immunizing employees from *discretionary* acts undertaken within the scope of their authority. [Citations.]

"*Muskopf* did not affect 'the settled rules of immunity of government officials for acts within the scope of their authority. . . . Government officials are liable for the negligent performance of their ministerial duties [citation omitted] but are not liable for their discretionary acts within the scope of their authority [citations omitted], even if it is alleged that they acted maliciously [citations omitted].' "

Appellants herein assert that "making a distinction between Government discretionary and ministerial functions" violates "constitutional safeguards." Said assertion is without merit. (See *Blackburn* v. *County of Los Angeles,* 42 Cal.App.3d 175, 178 [116 Cal.Rptr. 622]; *Widdows* v.

---

[2] *Brown* v. *City of Los Angeles,* 267 Cal.App.2d 849 [73 Cal.Rptr. 364].

[3] *Burns* v. *City Council,* 31 Cal.App.3d 999 [107 Cal.Rptr. 787].

[4] *Muskopf* v. *Corning Hospital Dist.,* 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457].

*Koch,* 263 Cal.App.2d 228, 241-242 [69 Cal.Rptr. 464]; *Flournoy* v. *State of California,* 230 Cal.App.2d 520, 523-526 [41 Cal.Rptr. 190].)

In the present case, the court did not err in sustaining the demurrer to the complaint. In their reply brief, appellants state: "The Court below dismissed the complaint without leave to amend. If plaintiffs can amend to state a cause of action, due process requires reversal to give plaintiffs an opportunity to be heard." Appellants state further that the state "will be held liable for issuance of a driver's license when discretion was *not* in fact exercised but issuance of the license was conducted in a routine or perfunctory manner."

Under section 12800 et seq. of the Vehicle Code, *supra,* the department shall not issue a driver's license to any person who is unable as shown by examination to understand traffic signs (etc.) and shall not issue a driver's license when it appears by examination or other evidence that such person is unable to operate a motor vehicle upon a highway safely because of physical or mental defect or lack of skill. It is to be presumed that the defendant department followed its official duties as required by the Vehicle Code for issuing the driver's license. Appellants do not indicate what facts, if any, they might allege that the driver's license was issued in a manner other than as authorized by the Vehicle Code. The trial court did not err in sustaining the demurrer without leave to amend.

The judgment (order of dismissal) is affirmed.

Lillie, J., and Hanson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 9, 1977.