Filed 6/22/18; Certified for Publication 7/11/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALAN C. RICHARDSON,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF MOTOR<br>VEHICLES,<br><br>     Defendant and Respondent. | A148613<br><br>(Sonoma County<br>Super. Ct. Nos. SCV255389,<br>    SCV255861) |

Alan Richardson appeals from an order granting a motion for summary judgment in favor of defendant, Department of Motor Vehicles (hereinafter, DMV).  Richardson sued the DMV for lifting a suspension against the driver's license of a 93-year-old woman, Elsie Dembowsky, who caused a motor vehicle collision that severely injured him.  Concluding, like the trial court, that the DMV is entitled to immunity for the licensing action taken in this case pursuant to Government Code section 818.4,[1] we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are not in dispute.  Appellant Alan Richardson (hereinafter, Richardson) was seriously injured when Dembowsky unlawfully turned left in her vehicle into oncoming traffic and collided with Richardson's motorcycle.  Richardson

_____

[1] All further statutory references are to the Government Code unless otherwise indicated.

1

had the right of way. The accident severed Richardson's left leg, broke his right leg and pelvis, damaged his spine, and left him paralyzed from the waist down.

Dembowsky was issued a driver's license on June 25, 2009, with an expiration date of July 3, 2014. On March 4, 2011, following an accident where Dembowsky hit a parked car several times, an officer with the Santa Rosa Police Department requested that the DMV perform a regular reexamination of Dembowsky. Accordingly, on April 13, 2011, the DMV mailed Dembowsky a Notice of Re-Examination Appointment scheduled for May 2, 2011.

On May 2, 2011, Dembowsky thus appeared before a hearing officer for an examination of "her driving patterns, her health conditions, and vision." Following this exam, the hearing officer requested that Dembowsky take both a written and an in-person driving test and submit to medical and vision evaluations. Dembowsky passed the written test on the same day of the hearing.

Her subsequent vision examination by ophthalmologist Patrick J. Caskey, M.D., revealed that, aside from macular degeneration that affected her nighttime driving, Dembowsky had no apparent condition that would affect her ability to drive safely. Similarly, her physical examination by Larry Marianella, M.D., revealed no medical condition that would interfere with her ability to safely operate a vehicle.

With respect to her driving test, Dembowsky failed to appear on the scheduled date of May 17, 2011. Due to her noncompliance, the DMV issued a Driver Safety Report imposing a suspension of Dembowsky's license, effective May 18, 2011.[2]

On February 1, 2012, Dembowsky caused another accident by making an unsafe left turn. Although no serious injuries resulted, both vehicles sustained major damage and Dembowsky's right ankle was injured. That same day, a Santa Rosa police officer verbally notified Dembowsky that she was driving with a suspended license. Dembowsky later testified that she had no knowledge prior to the accident that her

---

[2] This report noted that " 'favorable medical information [had been] received,' " and that "Dembowsky [had] 'completed the written law test with satisfactory results.' "

2

license was suspended. However, the record reflects that on February 3, 2012, the DMV verbally advised her by phone that her license was suspended.

After Dembowsky failed to appear for a telephone interview appointment that had been scheduled for February 13, 2012, the DMV sustained her suspension on the ground that she "has not completed the reexamination process." The DMV also issued a Notice of Interview Appointment, for February 24, 2012, and reviewed Dembowsky's accident history another time.

On February 24, 2012, Dembowsky appeared for the scheduled interview appointment. The hearing officer found Dembowsky could not perform her scheduled driving test due to the ankle injury she sustained in her February 1 accident. The hearing officer thus recommended her license remain suspended "for noncompliance." The hearing officer also advised Dembowsky that, because six months had passed, she would need to submit updated vision and medical evaluations in order to complete the reexamination process.

On May 15, 2012, Dembowsky submitted updated medical and vision evaluations by her personal physicians, which again revealed no condition that would affect her ability to drive safely during the day time.

On June 6, 2012, Dembowsky appeared again for a hearing, after which the hearing officer referred her for another behind-the-wheel driving test. On June 18, 2012, the DMV issued a special instruction permit, allowing Dembowsky to drive during the day if accompanied by a driving instructor.

As referred through the latest hearing, Dembowsky took her behind-the-wheel driving test on July 5, 2012. The examiner gave Dembowsky an unsatisfactory score due to her commission of seven critical errors. However, noting that Dembowsky's errors were correctable, the examiner recommended her for another driving test. In the meantime, the DMV issued a Notice of Findings and Decision to continue Dembowsky's license suspension based on her unsatisfactory test.

Dembowsky thereafter enrolled in a private driving school and participated in several lessons. Following these lessons, the driving school requested that the DMV give

3

Dembowsky another driving test (without communicating her performance or grade during her course).

On September 13, 2012, Dembowsky took her second behind-the-wheel driving test and, this time, received a satisfactory score. In addition, in a DMV vision examination, Dembowsky scored 20/25 in both eyes tested together without corrective lenses. Consequently, on September 14, 2012, the DMV released an Order of Set Aside or Reinstatement stating: "After a review of the information on file, including any evidence which you may have presented, the action effective 5/18/2011, pursuant to §13801, of the Vehicle Code (VC), is ended. [¶] You may: [¶] Retain any valid license which you have in your possession." This order effectively ended the suspension on Dembowsky's driver's license.

During the next 10 months, Dembowsky had a safe driving record. However, on July 3, 2013, the aforementioned accident occurred in which Richardson was severely injured when Dembowsky made the unlawful left turn without yielding to his oncoming motor vehicle. As a result, on August 7, 2014, Richardson sued collectively Dembowsky (who is no longer a party), the State of California and the DMV.

On October 15, 2015, the DMV moved for summary judgment, which the trial court granted after a contested hearing. In doing so, the court found, first, that there was no material disputed fact regarding whether the DMV's decision to lift Dembowsky's license suspension was a discretionary act (it was) and, second, that the DMV was therefore entitled to immunity pursuant to section 818.4.

On June 1, 2016, judgment was thus entered in favor of the DMV and against Richardson. This timely appeal followed.[3]

---

[3] The trial court entered judgment "in favor of defendant State of California *by and through Department of Motor Vehicles* and against Plaintiff Alan C. Richardson . . . ." (Italics added.) Because the record includes other references to the State of California and the DMV as separate defendants, for the purposes of this opinion, we treat the DMV as the sole defendant/respondent, because the action is against the DMV as a state department and not against the state itself.

4

## LEGAL PRINCIPLES AND STANDARD OF REVIEW

The governing legal principles are well established. To obtain summary judgment, the moving party (here, the DMV) must show based on undisputed material facts that either the action has no merit or there is a complete defense to the action. (Code Civ. Proc., § 437c, subds. (a)(1), (b)(1), (o)(2).) On the other hand, the opposing party, in order to defeat the motion, must demonstrate "the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

In reviewing a summary judgment, the appellate court reviews the lower court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained. (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.)

## DISCUSSION

Richardson challenges the trial court's grant of summary judgment in favor of the DMV on two grounds. First, Richardson contends the trial court erred in finding the DMV immune from liability under section 818.4, because the statute, by its language, immunizes only particular licensing actions, none of which were taken here. Second, in the alternative, Richard contends that, even assuming the DMV is entitled to the immunity afforded by section 818.4 when, in ordinary circumstances, it lifts the suspension on a driver's license, the DMV's conduct in this case falls under an exception to the statute—namely, the authority of section 815.6, pursuant to which a public entity remains liable for an injury proximately caused by its failure to discharge a mandatory duty. We address these contentions as appropriate below after setting forth the relevant legal scheme.

"The California Tort Claims Act [now the Government Claims Act] provides that a public entity is not liable for injury arising from an act or omission except as provided by statute." (*Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 630 (*Creason*), citing § 815, subd. (a).) Relevant here, section 818.4 confers immunity upon a public entity "for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke" a license. (§ 818.4.)

5

Section 815.6, in turn, carves out an exception to this grant of immunity: specifically, where "a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (§ 815.6.) As the California Supreme Court explains: "Under Government Code section 815.6, as we have construed it, 'a public entity is liable for an injury proximately caused by its failure to discharge a mandatory duty designed to protect against the risk of a particular kind of injury . . . .' [Citations.] Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts." (*Creason*, *supra*, at p. 631.)

Richardson's first argument is one of statutory interpretation. In Richardson's view, the DMV's action that proximately caused his injury was not covered by section 818.4, which immunizes only "the issuance, denial, suspension or revocation of, or . . . the failure or refusal to issue, deny, suspend or revoke" a license. (§ 818.4.) Rather, he argues, the injury-causing action was "the DMV's decision to 'lift the suspension' of Ms. Dembowsky's license," and as such falls outside the statutory grant of immunity.

We disagree. Section 818.4, in full, provides as follows: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." In this case, the DMV's action of "lift[ing] the suspension" of Dembowsky's license falls squarely within the scope of this statutory language when it is given its plain and ordinary meaning. Specifically, reasonably interpreted on this basis, we conclude that lifting the suspension of Dembowsky's license is a "similar authorization" to issuing or failing or refusing to suspend a license by a DMV employee who is "authorized by enactment to determine

6

whether or not [her license] should be issued, denied, suspended or revoked." To read section 818.4 otherwise, we conclude, would require distorting the ordinary meaning of the chosen words in such a way as to endanger the very thing we are charged to protect— the Legislature's intent. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733 ["Our primary task in construing a statute is to determine the Legislature's intent. [Citation.] Where possible, 'we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law' "].) Accordingly, we decline Richardson's invitation to effectively read out of section 818.4 the precise act taken by the DMV in this case with respect to Dembowsky's license—namely, its act of determining "whether or not [her license] should be . . . suspended," and thereafter authorizing the termination of the previously imposed suspension of it.

Turning now to his alternative argument, as stated above, Richardson contends that, notwithstanding section 818.4's general grant of immunity for the DMV's act of ending the suspension on a licensee's driving privilege, the DMV remains liable for his particular injury because it breached a mandatory duty within the meaning of section 815.6 not to "lift the suspension" placed on the driver's license of an individual, like Dembowsky, found by its agents to lack the ability to drive safely. As Richardson's authority holds, "Under section 12800 et seq. of the Vehicle Code . . . , the department shall not issue a driver's license to any person who is unable as shown by examination to understand traffic signs (etc.) and shall not issue a driver's license when it appears by examination or other evidence that such person is unable to operate a motor vehicle upon a highway safely because of physical or mental defect or lack of skill." (*Papelian v. State of California* (1976) 65 Cal.App.3d 958, 963.)

The DMV counters, and the trial court below agreed, that the alleged accident-causing act in this case was the DMV's decision to lift the suspension placed on Dembowsky's license after its agents determined she had met certain statutory prerequisites, a *discretionary* function shielded from liability by section 818.4 rather than

7

a mandatory ministerial function within the meaning of section 815.6. For reasons that follow, we conclude the DMV again has the stronger argument.[4]

" 'Government officials are liable for the negligent performance of their ministerial duties [citation omitted] but are not liable for their discretionary acts within the scope of their authority [citations omitted], even if it is alleged that they acted maliciously [citations omitted].' " (*Elson v. Public Utilities Commission* (1975) 51 Cal.App.3d 577, 583; accord, *Morris v. County of Marin* (1977) 18 Cal.3d 901, 913 [immunity under section 818.4 applies where the public entity "was under a statutory obligation to make such a discretionary decision" and "[i]n the absence of such discretion, . . . no immunity is afforded"]; see § 820.2 [statutory immunity for discretionary acts and omissions].)

Relevant to the DMV's discharge of duties as to Dembowsky, the record is undisputed the agency proceeded under Vehicle Code section 13801 at the request of a police officer who observed Dembowsky hit a parked car several times in a lot on March 8, 2011. Vehicle Code section 13801 provides in relevant part: "[T]he department may require the re-examination of the licensee, and shall give 10 days' written notice of the time and place thereof. If the licensee refuses or fails to submit to the re-examination, the department may peremptorily suspend the driving privilege of the person until such time as the licensee shall have submitted to re-examination. The suspension shall be effective upon notice." Here, the record reflects that, in April 2011, the DMV mailed notice to Dembowsky that she was under order to perform a regular reexamination due to her March 8th accident. Accordingly, on May 2, 2011, Dembowsky appeared before a DMV hearing officer for an in-person interview and

---

[4] Courts usually address the issue of duty or liability before addressing immunities. (See *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 43.) "If defendants owed [no duty] of the kind [plaintiff] claims, our inquiry ends there, and we need not reach the issue of immunity." (*Ibid.*) However, as it is true here, when the issue of liability presents a more difficult question, we may choose to address the statutory immunity first. (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 978 fn. 3.)

examination. Afterward, the hearing officer ordered her to perform a written law test and an in-person driving test, and have both a vision and a medical examination in order to complete her reexamination. On the same date (May 2, 2011), Dembowsky took and passed the written law test.

As Richardson notes, Dembowsky subsequently failed to appear on the scheduled date for the in-person driving test. As a consequence of Dembowsky's noncompliance with the scheduled test, the DMV issued a Driver Safety Report imposing a suspension of her license effective May 18, 2011. This DMV report reiterated the instruction that Dembowsky would need to submit to a complete agency reexamination in order to regain her driving privilege. Dembowsky complied. In particular, on May 16, 2011, Dembowsky provided the DMV with updated medical evaluations from both her physician and her ophthalmologist indicating she was physically and mentally capable of safe driving during daytime hours. She also took the DMV's vision exam and scored 20/40 in both eyes tested together without corrective lenses, thereby meeting and surpassing the statutory minimum standard. (See Veh. Code, § 12805, subd. (a)(2) [requiring licensees to have at least 20/200 vision in one eye].) And lastly, on September 13, 2012, after being issued a special instruction permit allowing her to drive during the day if accompanied by a driving instructor, and after participating in lessons with a private driving school, Dembowsky received a satisfactory score on the DMV's in-person driving test. Notably, in giving Dembowsky a satisfactory score on her driving test, the DMV examiner reported, among other things, that she "maintained proper speed and lane position at all times reacting properly to all vehicular and pedestrian traffic. She [also] scanned often and effectively."

Accordingly, on September 14, 2012, based upon her successful performance on this series of tests and evaluations, the DMV issued an Order of Set Aside or Reinstatement pursuant to Vehicle Code section 13801, stating: "After a review of the information on file, including any evidence which you may have presented, the action [of suspension] effective 5/18/2011, pursuant to §13801, of the Vehicle Code (VC), is ended. [¶] You may: [¶] Retain any valid license which you have in your possession." In other

9

words, the suspension of Dembowsky's driver's license was formally lifted, and she was expressly authorized to "[r]etain" her existing license, in accordance with the applicable Vehicle Code provision. (See Veh. Code, § 13801 ["the department *may* require the re-examination of the licensee . . . . If the licensee refuses or fails to submit to the re-examination, the department may peremptorily suspend the driving privilege of the person until such time as the licensee shall have submitted to re-examination," italics added].)

As this record reflects, contrary to Richardson's argument, the discretionary action at the heart of this case was not the issuance of a new license to Dembowsky or the renewal or reissuance of her old license; rather, it involved the reinstatement of her driving privilege following her completion of the statutory reexamination process. (See Veh. Code, § 13102 ["When used in reference to a driver's license, 'suspension' means that the person's privilege to drive a motor vehicle is *temporarily* withdrawn. The department *may*, before terminating any suspension based upon a physical or mental condition of the licensee, require such examination of the licensee as deemed appropriate in relation to evidence of any condition which may affect the ability of the licensee to safely operate a motor vehicle," italics added]; see Veh. Code, § 12805 ["(Grounds requiring refusal of license)," providing in subdivision (a)(4) that the DMV "shall not" issue or renew the driver's license of any person when "it is determined, by examination or other evidence, that the person is unable to safely operate a motor vehicle upon a highway"].)

All the evidence is in accord. The DMV never, as a formal matter, "determined, by examination or other evidence, that [Dembowsky was] unable to safely operate a motor vehicle upon a highway."[5] (See *People v. Superior Court* (*Wilson*) (1993) 18

---

[5] As mentioned above (*ante*, p. 2), the DMV sustained the suspension of Dembowsky's license on noncompliance grounds when she failed to appear for a driving test scheduled for May 17, 2011. Her suspension was then sustained two other times, once when she was unable to perform the requisite in-person driving test due to an ankle injury and again on noncompliance grounds, when she failed to appear for a telephone interview scheduled for February 13, 2012. As this record reflects, contrary to

10

Cal.App.4th 31, 36 ["Only if DMV determines the 'person is unable to safely operate a motor vehicle upon a highway' (Veh. Code, § 12805, subd. [(a)(4)]) is DMV mandated to terminate driving privileges"].) To the contrary, on September 14, 2012, the DMV determined the opposite—that Dembowsky was, based upon all the evidence in the file, capable of safe vehicle operation. And while Richardson repeatedly refers to facts in the record regarding Dembowsky's incidents of unsafe driving (including a driving test on July 5, 2012, in which she committed seven critical errors documented by the instructor), these facts do not require us to reach a different conclusion. As explained above, the DMV was authorized by the Vehicle Code to exercise its *discretion* to decide whether Dembowsky was entitled to the driving privilege. (Veh. Code, § 13801; see Veh. Code, § 12814, subd. (a) [a driver's age "may not constitute evidence of a condition requiring an examination of the driving ability"].) Richardson directs us to no facts in this record, nor do we know of any, that would authorize this court to override the DMV's valid exercise of discretion on this matter. (See *Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 646–647 [rejecting appellant's argument that the DMV was not entitled to section 818.4 immunity because evidence of the licensee's medical disabilities established "that DMV *had determined* [licensee] was 'unable to safely' drive" where there "was no disputed material fact DMV had determined [he] was able to safely drive and, in its discretion, issued him a license"]; *People v. Superior Court* (*Wilson*), *supra*, 18 Cal.App.4th at pp. 37–38 [concluding there was no triable issue of fact in the summary judgment record tending to show the state had made a finding or determination that licensee was "unable to safely operate a motor vehicle"]; cf. *Trewin v. State of California* (1984) 150 Cal.App.3d 975, 980–981 [holding that it was error to enter judgment on the pleadings in favor of the state because the complaint by inference stated a cause of action for violation of a mandatory duty].) And the law under such circumstances is clear. We must presume, in the absence of contrary evidence, that a

Richardson's suggestions, the lifting of the suspension on Dembowsky's license was delayed several times due to her failures to appear and ankle injury rather than due to any determination by a DMV agent that she was not able to safely operate a vehicle.

11

public agency follows its official duties as prescribed by the applicable statutory law (here, the Vehicle Code). (*Papelian v. State of California*, *supra*, 65 Cal.App.3d at p. 963 ["It is to be presumed that the defendant department followed its official duties as required by the Vehicle Code for issuing the driver's license"].)

Thus, having applied the governing law to the by-all-means unfortunate circumstances of this case, we must affirm the judgment. The undisputed evidence proves the DMV validly exercised its discretion to lift the suspension on Dembowsky's license after determining that she had passed the requisite written law test, in-person driving test, and vision and medical examinations. Accordingly, the trial court correctly ruled the DMV was immune from liability pursuant to section 818.4 and entered judgment in its favor.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.[6]

---

[6] The DMV's motion to strike portions of Richardson's opening brief is denied as moot in light of the opinions reached herein.

_____
Jenkins, J.

We concur:


_____
Pollak, Acting P.J.


_____
Siggins, J.

Filed 7/11/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALAN C. RICHARDSON,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF MOTOR VEHICLES,<br><br>    Defendant and Respondent. | A148613<br><br>(Sonoma County<br>Super. Ct. Nos. SCV255389,<br>    SCV255861)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION;<br>NO CHANGE IN JUDGMENT |

THE COURT:

The opinion in the above-entitled matter filed on June 22, 2018, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Date: __July 11, 2018__          __Pollak, J. _____, Acting P.J.

1

A148613/Richardson v. Dept. of Motor Vehicles

Trial Court:   Superior Court of Sonoma County

Trial Judge:   Nancy Case Shaffer, J.

Counsel:       Spiegel Liao & Kagay, Charles M. Kagay; Demeo, Demeo & West, Joshua
               M. West; Smith Dollar, Joshua M. West for Plaintiff and Appellant.

               Xavier Becerra, Attorney General, Kristin G. Hogue, Senior Assistant
               Attorney General, Jeffrey R. Vincent, Supervising Deputy Attorney
               General, Daniel B. Alweiss, Deputy Attorney General, for
               Defendant and Respondent Department of Motor Vehicles.