Filed 8/10/22; Certified for Publication 9/6/22 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| C.I., a Minor, etc., et al., | |
| Plaintiffs and Appellants, | E076212 |
| v. | (Super.Ct.No. CIVDS1725293) |
| SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County. Lynn M. Poncin, Judge. Affirmed.

Law Offices of Phillips, Jr., Gordon G. Phillips, Jr.; Robinson Legal Center, Hoanh N. Robinson; Perez Law Corporation, Ricardo A. Perez; The Arkin Law Firm and Sharon J. Arkin for Plaintiffs and Appellants.

Meyers Fozi & Dwork, Golnar J. Fozi, Daniel S. Modafferi and Gabriel N. Kontarovsky for Defendants and Respondents.

1

This action arises from a shooting on school premises. On April 10, 2017, Cedric Anderson entered his wife's classroom at an elementary school, which is part of the San Bernardino City Unified School District (the district). Anderson shot and killed his wife, a student, and himself in front of a class of students. Plaintiffs and appellants C.I. (minor), J.I. (guardian ad litem), D.B. (minor), J.B. (guardian ad litem), B.E.Jr. (minor), B.E.Sr. (guardian ad litem), J.A.G. (minor), J.G. (guardian ad litem), M.M. (minor), M.T.M. (guardian ad litem), M.P. (minor), E.B. (guardian ad litem), M.R. (minor), and D.R. (guardian ad litem) initiated this action against the defendants and respondents district and Y.D. (the school's principal), alleging, inter alia, negligence and dangerous condition of property. Defendants moved for summary judgment on the grounds they owed no duty to plaintiffs because Anderson's actions were unforeseeable, the school property was not a dangerous condition because there was no defect, and Anderson was not using the school property with due care. The trial court agreed, and judgment was entered in defendants' favor.

Plaintiffs contend defendants had a duty to take reasonable steps to protect students from criminal activity, and the district created a dangerous condition by failing to lock the front office door and equip classrooms with doors that locked. For the reasons stated *post*, we affirm the judgment.

## I. PROCEDURAL BACKGROUND AND FACTS

Anderson was the estranged husband of Karen Smith, a teacher employed by the district. On March 17, 2017, she left him (after he accused her of infidelity) and contacted an attorney to remove him from the house because it was her house. At that time, Smith told her adult daughter that Anderson had previously "told [Smith] that he was going to throw her out of the second story of their house and also chop her up into pieces."[1] However, Smith never said that Anderson had been physically violent toward her; rather, she stated that she was not afraid of him. Smith's daughter never observed any injuries on Smith, never witnessed Anderson become violent with her, and never suspected that he may be abusive toward her.

On April 10, 2017, Anderson arrived at the school's front office under the guise of dropping something off for his wife. The receptionist, who knew him as Smith's husband, witnessed him sign the visitor's log (as required by school policy), but never checked his signature or asked for identification. Previously, Anderson had been to the school and never posed a threat or caused any problem; Smith never informed anyone at the school or the district about her marital issues, and the school principal never observed any suspicious injuries on Smith. The receptionist therefore allowed Anderson to enter the school campus and proceed to Smith's classroom without notifying her of his presence or asking permission to send him back. According to Smith's daughter, if the

---

[1] Defendants objected to this evidence on hearsay grounds, and plaintiffs argued it goes to Smith's state of mind and notice. Other evidence shows that Smith was not afraid of Anderson, she never filed a police report concerning his threats, and she did not want him out of the house because he had "made that threat," but because it was her house.

receptionist had asked Smith for permission, she would have refused. Smith's classroom did not have a door; rather, it had a curtain. Anderson entered the classroom, and shot and killed Smith and a student. He then committed suicide by shooting himself.

At the time of the shooting, the district and the school had implemented some safety requirements including "SBCUSD Policy AR 1250 Community Relations" (regulation 1250), which sets forth the registration requirements for school visitors who are considered outsiders (Pen. Code, § 627.2), defines outsiders as anyone other than a student, parent, board of education member, public employee whose employment requires being on school grounds, representative of a school employee organization, elected public official, publisher or reporter of a newspaper, magazine, or other periodical, and a radio or television station (Pen. Code, § 627.1), and requires schools to post a sign advising visitors of these registration requirements (Pen. Code, § 627.6). According to the regulation, outsiders must provide extensive identifying information (including proof of identity), as well as their purpose for entering school grounds. (Pen. Code, § 627.3.) However, the regulation states: "*Unless otherwise directed by the principal or designee*, a staff member shall accompany visitors while they are on school grounds." Thus, the principal or designee has the discretion to allow visitors on school grounds without being accompanied by a staff member. The school's staff handbook discusses classroom visitors and volunteers. The handbooks states: "Anyone may visit the campus whether they have a child here or not. No visitor will be permitted on the site unless accompanied by an administrator or teacher."

Regarding the handbook's discussion of visitor/outsider access to school grounds, The school principal testified that her practice—and the school's historical policy—was to allow teachers' spouses to come on campus if they sign in. She also gave the receptionist "leeway to identify, or that if she recognized family members, that it was okay" to allow them access to the school's campus. While several classrooms (including Smith's) did not have doors, the principal never spoke to the district's safety expert about the building design or other unique factors concerning their absence. Both the principal and the school's receptionist confirmed that the door from the front office to the interior of the school "has always been unlocked," at least during school hours.

On December 21, 2017, plaintiffs initiated this action against the district, the school's principal, and Smith's estate, alleging negligence, negligence per se, breach of fiduciary duty, dangerous condition of public property, and premajority medical expense financial responsibility. Following demurrer, two causes of action remained: negligence and dangerous condition of public property.[2]

On July 25, 2019, Smith's estate successfully moved for summary judgment on the grounds she owed no duty to disclose her personal marital struggles to the district because Anderson's actions were not foreseeable, and plaintiffs could not demonstrate causation since Anderson's criminal conduct was the sole and superseding cause of plaintiffs' harm. The trial court relied on the following undisputed facts: (1) Anderson

---

[2] The guardians ad litem plaintiffs were parties to the claim for premajority medical expense financial responsibility only. Thus, after the demurrer was sustained without leave to amend as to this cause of action, these plaintiffs remained as guardians ad litem only.

never made a threat that he would shoot Smith or others; (2) Anderson never made any threats to harm Smith at her school; (3) Anderson never made threats to harm any of Smith's students; (4) Smith did not fear imminent danger or fear for her life prior to the incident; and (5) Smith neither knew nor could have known that Anderson would engage in the type of attack that occurred at her school. Judgment was entered on November 14, 2019, and plaintiffs did not challenge the trial court's ruling on appeal.

As to the district and the school principal, plaintiffs allege that the district is vicariously liable for the actions of the principal and Smith (Gov. Code, § 815.2), and directly liable for failing to develop and implement a school safety plan (Ed. Code, §§ 32280-32289)[3] and

---

[3] Education Code sections 32280-32289 require districts to develop a "comprehensive school safety plan that addresses the safety concerns identified through a systematic planning process," and that aims at preventing crime and violence on campus. (Ed. Code, § 32280.) While Education Code section 32280 imposes a duty to develop a school safety plan, it leaves implementation to the public entity's discretion or judgment: "It is the intent of the Legislature that all California public schools . . . develop a comprehensive school safety plan . . . . It is also the intent of the Legislature that all school staff be trained on the comprehensive school safety plan." (*Ibid.*) There is no mandatory requirement that a school's safety plan must include specific action items. (Ed. Code, § 32282, subd. (a)(2)(J).) Rather, the "procedures to prepare for active shooters or other armed assailants shall be based on the specific needs and context of each school and community." (*Ibid.*)

6

supervise students on school grounds (Ed. Code, § 44807).[4]  They assert that because of

defendants' special relationship with their students, defendants owed, inter alia, the duty

to (1) use reasonable measures to protect students from known threats of harm and

foreseeable acts of violence, (2) supervise students by enforcing the rules and regulations

necessary for their protection, and (3) devise and implement plans to address the threat of

school crime.  According to plaintiffs, defendants' failure to discharge their duties

resulted in Anderson gaining unsupervised access to Smith's classroom, where he carried

out a deadly shooting.  As to the district only, plaintiffs further allege liability based on

the dangerous condition of its property, which created a reasonably foreseeable risk of the

kind of injury that incurred, was caused by a negligent act or omission of a school

employee, and/or was actually or constructively known by the district.

On February 10, 2020, the district and the school's principal moved for summary

judgment on the following grounds:  (1) negligence—if, as the trial court found, Smith

could not have known that Anderson would engage in the type of attack at the school

which occurred, then defendants could not have known; and (2) dangerous condition of

public property—the lack of protective barriers on the property does not constitute a

_____

**4**  Education Code section 44807 provides:  "Every teacher in the public schools
shall hold pupils to a strict account for their conduct on the way to and from school, on
the playgrounds, or during recess.  A teacher, vice principal, principal, or any other
certificated employee of a school district, shall not be subject to criminal prosecution or
criminal penalties for the exercise, during the performance of his duties, of the same
degree of physical control over a pupil that a parent would be legally privileged to
exercise but which in no event shall exceed the amount of physical control reasonably
necessary to maintain order, protect property, or protect the health and safety of pupils, or
to maintain proper and appropriate conditions conducive to learning.  The provisions of
this section are in addition to and do not supersede the provisions of Section 49000."

dangerous condition (Gov. Code, § 835), and a dangerous condition cannot be the result of unforeseeable and inappropriate use of the property. Plaintiffs opposed the motion because the special relationship between defendants and students created a heightened duty of care, a *Rowland*[5] analysis does not warrant an exception to the duties owed by defendants, school shootings are foreseeable, and the school was in a dangerous condition.

On September 4, 2020, the trial court granted defendants' motion. Regarding the negligence cause of action, the court reasoned that plaintiffs "have not identified any negligent conduct on the part of Defendants that created a foreseeable risk of a shooting" on the school's campus because there is no evidence that defendants "failed to comply with any particular District regulation or school policy regarding visitors or outsiders on campus." The court added that there is no evidence "Anderson had engaged in any known activity that posed a foreseeable threat to the students." Thus, the court concluded that "while Defendants may have generally had a duty to protect the students of North Park, it cannot be found that Defendants breached any such duty because it cannot be found that Defendants were aware of any foreseeable threat to their safety." Regarding

---

[5] *Rowland v. Christian* (1968) 69 Cal.2d 108, 112-113 (*Rowland*). *Rowland's* multifactor test for determining whether an exception to the statutory general duty of reasonable care is warranted and remains good law. These factors include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id*. at p. 113.)

8

the dangerous condition cause of action, the court reasoned that the failure to lock the door leading from the front office to the school campus, along with the absence of a door on Smith's classroom, did not create a dangerous condition because teachers' spouses were allowed to move about the campus unaccompanied, and visitors were entitled to be present on campus once they signed in at the front desk.

Judgment was entered in defendants' favor on October 5, 2020.

## II.  DISCUSSION

Plaintiffs contend the trial court erred in granting defendants' motion for summary judgment.  They do not claim that every school shooting can be prevented.  Rather, they contend that "adequate safeguards" would have prevented the death or injury of anyone inside an interior classroom and in front of the students.  They argue that the school's receptionist should have called Smith to notify her about Anderson's presence, asked her to come to the front office to receive whatever item Anderson was dropping off, or instructed Anderson to leave the item with office staff.  They further assert the district created a dangerous condition on the school's property by failing to equip classrooms with doors that locked.

### A.  *Standard of Review.*

"An order granting summary judgment is reviewed de novo.  [Citation.]  As a practical matter, '"we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment."'  [Citation.]  A motion for summary judgment is properly granted 'if all the

papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.] . . .

"A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or show there is a complete defense to the plaintiff's cause of action. [Citations.] It is not until the defendant meets this burden that the burden of production shifts to the plaintiff to show that a triable issue of one or more material facts exists as to the defense. [Citations.] In conducting our review, we must identify the issues to be considered on the motion for summary judgment, which are defined by the pleadings. [Citation.] Significantly, as to each claim as framed by the complaint, ""*the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading*."""" (*Doe v. Good Samaritan Hospital* (2018) 23 Cal.App.5th 653, 661.)

    *B.    Negligence.*

Because the district is a public entity, "[u]nder the California Tort Claims Act (Gov. Code, § 810 et seq.), '[it] is not liable for injury arising from an act or omission except as provided by statute. . . .'" (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932 (*Hoff*); see *Guerrero v. South Bay Union School Dist.* (2003) 114 Cal.App.4th 264, 268 ["Tort liability for governmental entities is based upon statute."].) One such statute is Government Code section 815.2,[6] which provides that

---

[6] All further statutory references are to the Government Code unless otherwise indicated.

10

"[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . . ." (§ 815.2, subd. (a); see *Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 ["a school district is vicariously liable for injuries proximately caused by [the] negligence" of school personnel "responsible for student supervision"], superseded by statute as stated in *LeRoy v. Yarboi* (2021) 71 Cal.App.5th 737, 743, fn. 2; see also *Castro v. Los Angeles Bd. of Education* (1976) 54 Cal.App.3d 232, 235 [under § 815.2, "school districts are liable for the negligence of their employees"].) Through section 815.2, subdivision (a), "the California Tort Claims Act expressly makes the doctrine of respondeat superior applicable to public employers." (*Hoff*, at p. 932.) Accordingly, "'a school district is vicariously liable for injuries proximately caused by [the] negligence' of school personnel 'responsible for student supervision.'" (*Ibid.*)

To establish their negligence claim, plaintiffs must prove duty, breach, causation, and damages. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents-Rosen*).) "'"'Recovery for negligence depends as a threshold matter on the existence of a legal duty of care.'" [Citations.] 'The existence of a duty is a question of law, which we review de novo.'" (*Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 125.) Although a "'duty exists only if "'the plaintiff's interests are entitled to legal protection against the defendant's conduct[;]'"'" . . . 'a person may have an affirmative duty to protect the victim of another's harm if that person is in what the

11

law calls a "special relationship" with either the victim or the person who created the harm.'" (*Ibid*.)

Here, defendants concede that they had a special relationship with plaintiffs. (*Hoff*, *supra*, 19 Cal.4th at pp. 933-934; *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869.) "While 'neither school districts nor their employees are the insurers of the safety of their students,' school districts 'do owe [students] a duty to use the degree of care which a person of ordinary prudence, charged with comparable duties, would exercise in the same circumstances.' [Citation.] A school district's responsibility 'includes the duty to use reasonable measures to protect students from *foreseeable injury at the hands of third parties* acting negligently or intentionally.'" (*Achay v. Huntington Beach Union High School Dist.* (2022) 80 Cal.App.5th 528, 536, italics added.)

"The *Rowland* court instructs us to balance foreseeability-related factors and public policy factors in deciding whether to depart from an implicated duty of care." (*Colonial Van & Storage*, *Inc. v. Superior Court* (2022) 76 Cal.App.5th 487, 501 (*Colonial*).) Balancing these factors, we conclude that even though defendants had a special relationship with plaintiffs, which gave rise to a duty to protect them, negligence liability should be precluded in this case. In reaching this conclusion, we are not dismissing the traumatizing violence plaintiffs experienced. Rather, guided by the *Rowland* factors, and principally by the unforeseeability of this sole and tragic event at the school, we decide that imposing on a school district a duty to ensure that its school is safe from every trusted visitor would be entirely unfounded and unfair.

The foreseeability-related factors are "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, [and] the closeness of the connection between the defendant's conduct and the injury suffered." (*Rowland*, *supra*, 69 Cal.2d at p. 113.) "Of these three factors, whether the injury was foreseeable is the most important in determining whether an exception should exist to the duty to protect. [Citation.] Our task '"is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed."' [Citations.] We do, however, evaluate the kind of third party conduct involved in light of all the surrounding circumstances as probative in assessing generally whether the category of [defendant's] alleged negligent conduct is sufficiently likely to result in the kind of harm plaintiffs experienced. 'What is "sufficiently likely" means what is "'likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.'"'" (*Colonial*, *supra*, 76 Cal.App.5th at p. 502.)

Of the three foreseeability-related factors, we assume the degree of certainty that the plaintiffs suffered an injury, albeit psychological, weighs in favor of a duty to protect. Thus, we focus on the other two factors. Regarding the foreseeability of harm, plaintiffs have produced no evidence that defendants had actual knowledge that Anderson posed a risk of harm to Smith or anyone at the school. Quite the contrary, Anderson had previously visited the school without incident, and Smith never expressed any concern to

family or defendants about his potential for violence or her safety. Rather, Smith told her daughter that she was not afraid of Anderson, and Smith's daughter testified that she never observed any injuries on Smith, never witnessed Anderson become violent with her, and never suspected that he may be abusive. Notably, Smith's coworkers were unaware that Smith was estranged from her husband. In short, plaintiffs presented no evidence that any district employee—including Smith herself—could have foreseen that Anderson was a danger to the safety of the school.

Even so, plaintiffs contend "'the question here is not whether [the district] could predict that [Anderson] would [shoot] [Smith] in [her classroom and in front of her students]. It is whether a reasonable [school district] could foresee that its negligent failure to control a potentially violent ["outsider"], or to warn students who were foreseeable targets of his ire, could result in harm to one of those students. Violent unprovoked attacks by and against [ ] students, while still relatively uncommon, are happening more frequently.'" Plaintiffs argue the prevalence of school shootings and the frequency of domestic violence "are *likely enough in the setting of modern life that a reasonably thoughtful* [*person*] *would take account of it in guiding practical conduct*." We disagree. "It is undeniable that shootings and other forms of violence can and do happen in the workplace [and on school grounds]. But for foreseeability in the context of a duty to protect, '[m]ore than a mere possibility of occurrence is required since, with hindsight, everything is foreseeable.'" (*Colonial*, *supra*, 76 Cal.App.5th at p. 503.) This case presented nothing more than a "'mere possibility of occurrence.'" (*Ibid*.)

14

Nonetheless, defendants did account for potential third party violence by virtue of the school's safety plan which was followed by the receptionist: Visitors, or outsiders, at the school signed in at the front office. If they were not known by school personnel, they were not allowed on school grounds without a chaperon. However, the school's policy allowed teachers' spouses access to school grounds on their own. Because Anderson was Smith's spouse and had previously been on school grounds (without incident), on April 10, 2017, he was permitted access to Smith's classroom without an escort. At that time, defendants were unaware of Smith's estrangement from him. As her marital relationship was not related to her employment as a teacher for the district, Smith had no duty to disclose this personal situation, especially since she had no concern that Anderson posed a threat to her safety. Moreover, Anderson did not have a documented history of prior incidents at the school,[7] and there were no reports of similar violent incidents that may have put defendants on notice of a potential murderous attack at the school.

The California Supreme Court has repeatedly held that "'[t]he most important factor to consider in determining whether to create an exception to the general duty to exercise ordinary care . . . is whether the injury in question was *foreseeable*.'" (*Regents-Rosen*, *supra*, 4 Cal.5th at p. 629; see *Kesner v. Superior Court* (2016) 1 Cal.5th 1132,

---

[7] In their memorandum in opposition to defendants' motion for summary judgment, plaintiffs stated that "[t]hree days prior to the shooting, Anderson was seen chaining a bicycle to Karen Smith's car door requiring the response of police, yet Defendants did nothing to prevent him from coming back and gaining entry to [the school]." Even so, plaintiffs presented no evidence confirming Anderson was responsible for chaining the bicycle to Smith's car door or that the school's principal or anyone in the school's administration knew about the incident or Anderson's alleged involvement.

1145 [discussing employers' duty to prevent transmission of asbestos from premises to employees' household members]; *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 434 [discussing therapist's duty to protect discharged through warnings].) Defendants' safety plan addressed the potential for a school shooting or domestic violence by denying unknown visitors access to the school grounds without an escort. However, absent specific evidence to the contrary, an attack by a known, trusted visitor, such as a teacher's spouse, is speculative—at best—and not foreseeable.[8]

The third foreseeability-related factor is the closeness of the connection—or causal nexus—between the defendants' conduct and the injury suffered. Plaintiffs argue "the failure to take appropriate steps to prevent unauthorized 'outsiders,' like Anderson, from entering the school when students are present is a direct link between the procedures that should have been promulgated and enforced and what actually happened." However, in cases like this one involving third party criminal conduct, "the existence of an intervening act does not necessarily attenuate a defendant's negligence. Rather, 'the touchstone of the analysis is the foreseeability of that intervening conduct.'" (*Regents-Rosen*, *supra*, 4 Cal.5th at p. 631.) We discern no causal nexus here. Once again, we are mindful that "'[f]oreseeability supports a duty only to the extent it is reasonable, because rarely is anything completely unforeseeable.'" (*Doe v. Anderson Union High School Dist.* (2022)

---

**8** Plaintiffs assert the district is liable for its failure to properly train the school's staff as "to the proper precautions required to keep the school safe from active shooters." We disagree. Safety training regarding "'Armed Intruder Awareness' and precautions that should be taken" does not change the foreseeability of a criminal attack by a known, trusted outsider who was visiting the school.

16

78 Cal.App.5th 236, 243 (*Doe-Anderson*); *Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 307 ["On a clear day, you can foresee forever."]; *Weirum v. RKO General*, *Inc.* (1975) 15 Cal.3d 40, 47 ["virtually every act involves some conceivable danger"].)

Because Smith had no reason to foresee Anderson's attack on her at any place, it was not reasonably foreseeable that it would occur on school grounds such that defendants should have envisioned its occurrence when implementing its safety plan as to spouses' unaccompanied access to school grounds.

Turning to the public policy factors, they include "the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland*, *supra*, 69 Cal.2d at p. 113.) Plaintiffs contend moral blame attaches because (1) they are powerless compared to defendants, (2) imposition of a duty would avert the violence that occurred, (3) the burden is minimal because outside visitors will be restricted to the front office, and (4) defendants are able to obtain insurance for negligent liability. In response, defendants criticize plaintiffs' standard— "because *some* husbands commit acts of domestic violence against their wives, the school is morally to blame unless it presumes that *every* husband is prone to murder his wife while visiting her at work"—on the grounds it results in the policy factors swallowing the foreseeability factors, "as every school would be responsible for preventing every act of

17

domestic violence, no matter how unforeseeable." We agree with defendants.[9]

Public policy factors counsel against imposing a duty on school districts to ensure that students are safe from third party criminal conduct of known visitors—including teachers' spouses, and students' parents and family members. (Cf. *Colonial*, *supra*, 76 Cal.App.5th at pp. 504-505.) The extent of the burden to shoulder such a duty and the consequences to school personnel would be extremely heavy. Districts would become the insurers of the safety of students in the event of any intentional harm (including from within), even if the districts have no reason to expect it. This is an unrealistic responsibility. To avoid liability, schools would be compelled to undertake onerous and costly measures—such as inspecting every person who comes on campus for weapons and other safety hazards, vetting all visitors, teachers, and students, and monitoring their daily activities and the condition of classrooms at least during school hours. Maintaining

---

[9] In their reply brief, plaintiffs clarify their argument: "Because domestic violence and school shootings are growing ever more common 'in the setting of modern life' (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1145), schools have a duty to take reasonable precautions to assure that no one is able to kill their spouse *at school, in front of the students*. And there is a very simple and reasonable precaution to fulfill this duty: Don't let spouses on campus when students are present." However, domestic violence/school shootings are not the norm; rather, they are rare. (Tierney, *Sorrow and Precaution, Not Hysteria* (May 27, 2022) City Journal <https://www.city-journal.org/school-shootings-horrific-but-statistically-rare> [as of Aug. 10, 2022]; Flannery, Fox, Wallace, Mulvey & Modzeleski, *Guns, School Shooters, and School Safety: What We Know and Directions for Change* (Mar. 5, 2021) School Psychology Review 50:2-3, pages 237-253<https://www.tandfonline.com/doi/full/10.1080/2372966X.2020.1846458?scroll=top&needAccess=true> [as of Aug. 10, 2022] ["[F]ear of an active shooter [is] in disproportion to a person's actual risk of being injury or killed in a school shooting."]; National Coalition Against Domestic Violence (2021) *Domestic Violence and Firearms* <https://assets.speakcdn.com/assets/2497/guns__dv_2021.pdf> [as of Aug. 10, 2022] ["In 2018, 1,014 women were killed by male intimate partners."].)

the safety of the schools may also include posting security guards throughout campuses, installing metal detectors at every entrance onto school grounds, and installing video cameras inside and outside each classroom. (*Id*. at p. 504.) The duty proposed by plaintiffs is skirting on absolute liability which, given the enhanced risk, would cause in increased insurance premiums. (*Id*. at p. 505.)

We are not persuaded by plaintiffs' assertion that "[a]ll that is required is that 'outsiders' be restricted to the school office unless there are no students on campus."[10] This case involves the criminal conduct of an outsider who was known to defendants as a trusted spouse. Even if he had been forced to remain in the main office, if his goal was to attack a specific person on school grounds, defendants could not have removed every means of accomplishing that goal. (*Wiener v. Southcoast Childcare Centers*, *Inc*. (2004) 32 Cal.4th 1138, 1150 ["[F]irst, it is difficult if not impossible in today's society to predict when a criminal might strike. Also, if a criminal decides on a particular goal or victim, it is extremely difficult to remove his every means for achieving that goal."]; *Colonial*, *supra*, 76 Cal.App.5th at p. 505 ["Reasonable precautions would not likely stop an irrational explosive attack or keep random victims from sustaining injuries."].) It is impossible to prevent all violence on school grounds. (cf. *Regents-Rosen*, *supra*, 4 Cal.5th at p. 634 ["[A] duty of care is not the equivalent of liability. Nor should our holding be read to create an impossible requirement that colleges prevent violence on

---

**10** Any argument regarding defendants' failure to comply with certain Education Code sections, Penal Code sections pertaining to "outsiders" on school campuses, and the district's regulation 1250 regarding the same, concerns causation, not duty.

their campuses."].) "The District's duty of supervision was limited to the risks of harm that were reasonably foreseeable, i.e., that were known to the District or that reasonably should have been known to the District. [Citation.] School districts are not the insurers of the physical safety of students [citation], and '[s]tudents are not at risk merely because they are at school. [Citation.] A contrary conclusion would unreasonably "require virtual round-the-clock supervision or prison-tight security for school premises . . . .""" (*Doe-Anderson*, *supra*, 78 Cal.App.5th at p. 243.) For that reason, defendants are neither morally culpable nor blameworthy for their failure to anticipate or prepare for Anderson's attack.

Based on the above, we conclude the *Rowland* factors (lack of foreseeability of harm and public policy counsels against imposing liability on defendants) justify limiting defendants' duty to protect students from a known, trusted third party's criminal harm.

C.     *Dangerous Condition.*

"[S]ection 835 . . . permits the imposition of liability on a public entity for injury caused by a dangerous condition of its property." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1133 (*Zelig*).) To establish their dangerous condition of public property claim, plaintiffs must prove a dangerous condition on public property at the time of the injury; the condition proximately caused the injury; the condition created a reasonably foreseeable risk of the kind of injury sustained; and the public entity had actual or constructive notice of the dangerous condition of the property in sufficient time to have taken measures to protect against it. (§ 835; *Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 439.) Section 830, subdivision (a), defines a dangerous condition

20

as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." "The existence of a dangerous condition ordinarily is a question of fact, but the issue may be resolved as a matter of law if reasonable minds can come to only one conclusion." (*Zelig*, *supra*, 27 Cal.4th at p. 1133.)

Here, plaintiffs allege the unlocked front office door leading to the classrooms, along with the absence of lockable classroom doors, created a dangerous condition. However, the evidence fails to show a causal connection between the alleged defect and plaintiffs' injuries. As we previously stated, Anderson (a teacher's husband) was a known, trusted visitor at the school who properly signed in at the front desk as required. The school's policy was to allow spouses of teachers to move about the school grounds unaccompanied. Thus, locking the front office door (which leads to the classrooms) would not have affected the risk of harm faced by Smith and her students. Even if that door had been locked, the receptionist would have unlocked it and permitted Anderson to proceed to Smith's classroom.

Likewise, a lockable door on Smith's classroom would not have affected the risk of harm since Smith was unaware that Anderson posed a threat to her safety. Even if Smith's classroom had a door, and that door was locked, there is no evidence that she would have refused to open the door to him. Plaintiffs' reference to Smith's daughter's statement that Smith would not have granted permission to allow Anderson on school grounds is, at best, speculative. And, "'[a]n issue of fact can only be created by a conflict

21

of evidence. It is not created by "speculation, conjecture, imagination or guesswork."''" (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1014.) If Smith feared Anderson, she would have filed a police report and informed her family and defendants of the gravity of the threat that he posed. She did neither.

Notwithstanding the above, plaintiffs contend "the question is whether there was a dangerous condition of the school that created a reasonably foreseeable risk that an armed intruder **could gain access** to the campus and/or to a classroom to kill or injure." They assert that their injuries are the result of "the *combination* of the third party conduct *with* the condition of the property that created the dangerous condition, i.e., an armed intruder was given access to the students." If Anderson had been a stranger to defendants, arguably, plaintiffs' assertion may have merit. But Anderson was not a stranger; he was a teacher's spouse with no history of violent behavior. Plaintiffs' argument assumes that section 835 foreseeability encompasses any kind of injury or incident once the dangerous condition is established. To accept this argument would make foreseeability boundless, while ignoring section 835's requirement that plaintiffs prove "that the injury was proximately caused by the dangerous condition," and "that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred . . . ." (§ 835.)

Consequently, we conclude that section 835 does not provide a statutory basis for liability in the present case.

D.    *Immunity.*

At the initial hearing on defendants' motion for summary judgment, plaintiffs asked for, and were granted, leave to file a sur-reply brief on the issue of immunity.

Following supplemental briefing, the trial court found that defendants were immune from liability because (1) there was no mandatory duty under the Education Code or other statutes to implement specific policies regarding the presence of visitors on school grounds or the prevention of active shooter incidents (Ed. Code, §§ 32280-32289; see fn. 3, *ante*); (2) regulation 1250 does not create a mandatory duty regarding visitors on campus; and (3) the school's principal's decision to allow staffs' spouses on school grounds, without an escort, is protected by discretionary immunity (Gov. Code, § 820.2).[11]

On appeal, plaintiffs contend the trial court erred in determining that discretionary immunity applies. Since we have concluded the *Rowland* factors (lack of foreseeability of harm and public policy counsels against imposing liability on defendants) justify limiting defendants' duty to protect students from a known, trusted third party's criminal harm, we need not reach the issue of immunity. (*Richardson v. Department of Motor Vehicles* (2018) 25 Cal.App.5th 102, 110, fn. 4; *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 43 ["If defendants owed [no duty] of the kind [plaintiff] claims, our inquiry ends there and we need not reach the issue of immunity."].)

---

[11] Section 820.2, provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

23

## III.  DISPOSITION

The judgment is affirmed.  Defendants are awarded costs on appeal.


McKINSTER
Acting P. J.

We concur:



MILLER
J.


CODRINGTON
J.


24

Filed 9/6/22

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| C.I., a Minor, etc., et al., | |
| Plaintiffs and Appellants, | E076212 |
| v. | (Super.Ct.No. CIVDS1725293) |
| SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT et al., | ORDER DENYING PETITION FOR REHEARING AND CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

THE COURT

The court has reviewed the petition for rehearing filed August 19, 2022, and the requests for publication filed August 22 and August 30.

The petition for rehearing is denied.

The requests for publication are granted. The nonpublished opinion filed August 10, 2022, meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(2) and (6).

1

IT IS SO ORDERED that said opinion be certified for publication pursuant to

California Rules of Court, rule 8.1105(b).


McKINSTER
_____
Acting P. J.

We concur:



MILLER
_____
J.


CODRINGTON
_____
J.